**STATE BANK OF BURLEIGH COUNTY,**
Plaintiff and Respondent,

v.

**Lyle W. PORTER and Phillip W. Nelson,**
Defendants and Appellants,

and

**Vernon Peterson, Evan Shark, Albert A. Wolf, Jerry Knudsen, and Robert Verson, Defendants.**

Civil No. 8512.

Supreme Court of North Dakota.

April 18, 1969.

Rausch & Chapman, Bismarck, for plaintiff and respondent.

Vogel, Bair & Graff, Mandan, for defendant and appellant Phillip W. Nelson.

Floyd B. Sperry, Bismarck, for defendant and appellant Lyle W. Porter.

ADAM GEFREH, District Judge.

This is an appeal from a judgment entered in the District Court of Burleigh County in favor of the Plaintiff, State Bank of Burleigh County, against seven persons sued as guarantors on notes delivered by Dakota Winter Sports, Inc. to the Plaintiff bank. Two of the seven defendants, Lyle W. Porter and Phillip W. Nelson, have appealed from this judgment.

The record indicates that in 1963 several of the officers of Dakota Winter Sports, Inc., d/b/a Twilight Hills Ski Shop, desired to establish a line of credit with the State Bank of Burleigh County, located in Bismarck, North Dakota. The bank

agreed to extend a line of credit to Dakota Sports, Inc. on condition that a certain guaranty covering the obligations be delivered to the bank. An instrument, marked Plaintiff's Exhibit 1, dated September 17, 1963, was executed by seven persons including Lyle W. Porter and Phillip W. Nelson, the appellants. The instrument delivered reads as follows:

To: THE STATE BANK OF BUR-
LEIGH COUNTY
BISMARCK, NORTH DAKOTA

For value received and for the purpose of enabling Dakota Winter Sports, Inc. d/b/a Twilight Hills Ski Shop to guarantee their indebtedness to you and to obtain credit from you and to re-discount paper with you, without recourse, or otherwise, and for the purpose of securing their present or any future indebtedness to you, of any kind and character, however incurred, or created, We, the undersigned hereby guarantee the prompt payment, at maturity, of all notes given by the Corporation to you, and notes which the State Bank of Burleigh County, Bismarck, North Dakota, may have discounted, or may hereafter discount for the said Corporation it being immaterial whether such notes are endorsed with, or without recourse, and guaranty all of their corporate indebtedness to you present, and future, of every kind and character.

Notice of acceptance of this guarantee; and notice of non-payment and protest, or of the creation or of the existence of the indebtedness, or liability covered by the within named corporation, are hereby waived.

This instrument shall apply to all existing and to all future indebtedness and liability until written notice to you, from the undersigned, is given, not to make any further advances upon the faith thereof.

The bank made loans to Dakota Sports, Inc., to the extent of $15,000.00, evidenced by promissory notes executed by Dakota Sports, Inc., as follows: One note dated September 4, 1963, in the amount of $5,-000.00, due December 4, 1963; one note dated October 22, 1963, in the amount of $5,000.00, due January 22, 1964; and one note dated December 16, 1963, in the amount of $5,000.00, due January 16, 1964. Each of the notes included a clause stating, "The several makers, signers, guarantors and endorsers hereof hereby waive presentment, demand, notice of dishonor and protest, and consent that the time of payment may be extended or this note renewed without affecting their liability thereon." Interest payments and some payments on the principal were made, and the notes renewed from time to time until May 23, 1966, when the principal sum of $12,577.34 was renewed by a demand note. The record also shows that negotiations for a Small Business Administration loan were carried on by Dakota Sports, Inc. from about September 15, 1965, for a $100,000.00 loan until February 1, 1966, when the loan authorization was cancelled by the SBA. The bank was informed of this decision by letter from the SBA dated May 25, 1966.

The record further shows that the bank at various times had made demand upon Dakota Winter Sports, Inc. and the guarantors for payment of the notes. In so far as the appellants are concerned, the record shows that on August 31, 1965, demand was made by letter upon Mr. Phillip Nelson, Defense Exhibit "F", for payment of the past due notes. Defense Exhibit "J" contains copies of two letters directed to the President of Dakota Winter Sports, Inc., one by Mr. Phillip W. Nelson, dated September 2, 1965, and the other by Mr. Lyle W. Porter, dated September 3, 1965, each letter stating in part "Demand has been made upon me as guarantor, that arrangement be made, forthwith, for payment of a note dated April 21, 1965, the amount of $13,000.00. I am informed by the State Bank of Burleigh County that said note has been in default since July 1,

1965, with an unpaid principal balance of $12,000.00 plus interest. * * *"

The record shows that on September 3, 1965, the bank was served with an instrument in which demand was made, on behalf of Phillip W. Nelson, upon the bank to take legal action against Dakota Winter Sports, Inc. for the collection of the past due notes. A similar demand was made upon the bank by Mr. Lyle W. Porter on the same date. The Plaintiff commenced action against the guarantors on April 13, 1967.

In order to simplify references to the different parties, the State Bank of Burleigh County will hereafter be referred to as the "creditor", The Dakota Winter Sports, Inc., as the "principal debtor" or "principal", and Lyle W. Porter and Phillip W. Nelson, as the "guarantors".

The issues on this appeal are: Whether the guaranty extended to the $5,000.00 note dated September 4, 1963; whether refusal by the bank to sue the principal debtor after demand had been served upon it exonerated the guarantors; whether the renewal of the notes after demand was made upon the creditor to commence action against the principal debtor operated to exonerate the guarantors; and whether any lack of due diligence by the creditor to proceed against the principal debtor should operate to estop the creditor from enforcing the guaranty against the guarantors.

On the first issue the guarantors contend that the note for $5,000.00 dated September 4, 1963, was given prior to the date of the guaranty, therefore there was no consideration to effect a binding guaranty as to this $5,000.00 note.

 This contention cannot be sustained. A guaranty, although executed subsequently to the creation of the principal obligation, if given in fulfillment of an agreement on the faith of which the principal obligation was created, is deemed contemporaneous in effect and requires no other consideration. The record shows

that the $5,000.00 note of September 4, 1963, was intended to cover a portion of the $15,000.00 credit that principal debtor had sought from the creditor and to which the creditor had agreed on condition that the guaranty would be delivered. The record further indicates that, although the note was dated September 4, 1963, and several checks were written upon the creditor prior to September 17, 1963, the proceeds of the note were not deposited in the bank until September 17, 1963 and none of the checks was paid by the creditor until September 17, 1963, the date of the guaranty. The record supports the conclusion that the guaranty executed by the guarantor was in consideration for the agreement by the creditor to establish a line of credit to the principal debtor to the extent of $15,000.00 over a period of several months, and the note dated September 4, 1963 was given to cover the first portion of this credit. This is clearly in conformity with Sec. 22–01–03 NDCC and the general rule of law found in 38 Am.Jur.2d, Guaranty, Sec. 45:

> Although the guaranty promise may have been made at a time subsequent to the creation of the principal obligation, the guaranty promise is founded upon a consideration if the promise was given as the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty.

See also First National Bank of Hopkins v. International Machines Corp., 279 Minn. 188, 156 N.W.2d 86.

On the second issue the guarantors contend that they were exonerated when the creditor refused to proceed against the principal debtor. In support of this contention they cite Sec. 22–03–08 NDCC. The guarantors contend that the guaranty agreement they signed can be construed as a surety contract and therefore Sec. 22–03–08 NDCC would be applicable. Section 22–03–08 reads as follows:

> A surety may require his creditor to proceed against the principal or to pur-

sue any other remedy in his power which the surety cannot himself pursue and which would lighten his burden. If the creditor neglects to do so, the surety is exonerated to the extent to which he is prejudiced by such neglect.

Although it may be difficult to distinguish a contract of guaranty from that of surety in some cases, our statutes and case law define these undertakings in separate and distinct terms. Section 22–01–01 NDCC defines a guaranty as follows:

1. A "guaranty" shall mean a promise to answer for the debt, default, or miscarriage of another person; and

2. A "continuing guaranty" shall mean a guaranty relating to a future liability of the principal under successive transactions which either continue his liability or from time to time renew it after it has been satisfied.

A guaranty may be further classified as "absolute", "conditional", "guaranty of solvency", "guaranty of collection", and "guaranty of payment."

A guaranty is deemed unconditional unless its terms import some condition precedent to the liability of the guarantor. (Section 22–01–09)

An absolute guaranty is defined as

a contract by which the guarantor has promised that if the debtor does not perform his obligation or obligations, the guarantor will perform some act (such as the payment of money) to or for the benefit of the creditor. Thus, a guaranty is classified as absolute even though the liability of the guarantor is conditioned upon the default of the principal debtor. When the guaranty is absolute, and provides for the payment of a specified sum of money at a specified date, liability becomes fixed on default of the debtor. 38 Am.Jur.2d, Guaranty, Sec. 21, p. 1019.

The distinction between a "guaranty of collection" and "guaranty of payment" is defined as follows:

A guaranty of the payment of a debt is distinguished by the authorities from a guaranty of the collection thereof, the former being absolute and the latter conditional. The guaranty of payment binds the guarantor to pay the debt at maturity in the event the money has not been paid by the principal debtor; and upon default by the debtor, the obligation of the guarantor becomes fixed. The guaranty of collection is construed as a promise on the part of the guarantor that if the principal creditor cannot collect the claim with due diligence, generally following suit against the principal debtor, the guarantor will pay the creditor. Thus, the guaranty of collection, being conditioned in character, obligates the guarantor to make payment only on the condition that the creditor has attempted unsuccessfully but with due diligence to collect the claim from the debtor. 38 Am.Jur.2d, Guaranty, Sec. 22, p. 1021.

See also Smith v. Bradley, 16 N.D. 306, 112 N.W. 1062 in which this court discussed the distinction between a "guaranty of collection" and "guaranty of payment" in substantially the same language. In Smith v. Bradley the court quoted with approval from McMurray v. Noyes, 72 N.Y. 523, 28 Am.Rep. 180, as follows:

The fundamental distinction between a guaranty of payment and one of collection is that, in the first case, the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor without taking any step to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor; while, in the second case, the undertaking is that, if the demand cannot be collected by legal proceedings, the guarantor will pay, and consequently legal pro-

ceedings against the principal debtor and a failure to collect of him by those means are conditions precedent to the liability of the guarantor, and to these the law, as established by numerous decisions, attaches the further condition that due diligence be exercised by the creditor in enforcing his legal remedies against the debtor.

Section 22–01–10 NDCC defines a guaranty of payment in terms of liability as follows:

A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal and without a demand or notice.

Section 22–03–01 NDCC defines a surety as follows:

A surety is one who, at the request of another and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor.

 In Northern State Bank of Grand Forks v. Bellamy, 19 N.D. 509, 125 N.W. 888, 31 L.R.A.,N.S., 149, this court stated:

The "contract of guaranty" is broadly and clearly distinguished from that of suretyship. "A contract of suretyship is a contract by which the surety becomes bound as the principal or original debtor is bound. It is a primary obligation, and the creditor is not required to proceed first against the principal before he can recover from the surety. The surety is bound with his principal as an original promisor, that is, he is a debtor from the beginning and must see that the debt is paid and is held ordinarily to know every default of his principal, and cannot protect himself by the mere indulgence of the creditor, nor by want of notice of the default of the principal, however such indulgence or want of notice may, in fact, injure him. Being bound with the principal, his obligation to pay is equally absolute. On the other hand, the contract of a guarantor is his own separate contract; it is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and is not merely an engagement jointly with the principal to do the thing. A guarantor, not being a joint contractor with his principal, is not bound to do what the principal has contracted to do, like a surety, but only to answer for the consequences of the default of the principal. The guarantor has to answer for the consequences of his principal's default. A guarantor is an insurer of the solvency of the debtor. A surety may be sued as promisor, but a guarantor cannot." Ogden, Negotiable Instruments, § 220.

The present action is based on the separate contract executed by the guarantors. This contract meets the distinguishing characteristics of that of a contract of guaranty as described in State Bank of Grand Forks v. Bellamy, supra.

Chapter 22–04 NDCC relates to "Letters of Credit." This chapter was repealed effective July 1, 1966. Sec. 22–04–01 defined a letter of credit as follows:

A letter of credit is a written instrument addressed by one person to another requesting the latter to give credit to the person in whose favor it is drawn.

Section 22–04–07 provided:

If the parties to a letter of credit appear by its terms to contemplate a course of future dealing between the parties, it is not exhausted by giving a credit even to the amount limited by the letter, which is subsequently reduced or satisfied by payments made by the debtor, but is to be deemed a continuing guaranty.

The contract signed by the appellants could be viewed as a "letter of credit" and under Section 22–04–07 would be a continuing guaranty, and the liability of the appellants would be that of guarantors. In

Aluminum Cooking Utensil Co. v. Rohe, 43 N.D. 433, 175 N.W. 620, this court held that a letter of credit "constitutes a contract of guaranty."

■ When we view the contract executed by the guarantors in the light of the definitions and distinctions we have cited and which we believe are the established principles of law in most jurisdictions, we must agree with the trial court that the instrument in question is an absolute, unconditional, continuing guaranty. It is a guaranty of payment as distinguished from a guaranty of collection.

In some jurisdictions the distinctions between a surety and guarantor have been abolished by statute. Our statutes on surety and guaranty were derived from California. California in 1939 revised its statutes and abolished the distinctions between a guarantor and a surety. However, prior to 1939 California recognized the distinctions between a guaranty and surety. In Bank of America Nat. Trust & Savings Ass'n v. McRae, 81 Cal.App.2d 1, 183 P.2d 385, the California court held:

The original notes held by the bank matured according to their express terms prior to the death of the guarantor, Alexander Bell McRae, which occurred June 3, 1932. There was then an absolute liability of the estate to pay the notes since the maker thereof had defaulted. It was not necessary for the bank to first exhaust its remedy by suit, foreclosure of the lien, or otherwise, as a prerequisite to liability of the guarantor. The guaranty was absolute and unconditional. Civil Code, Sec. 2807; Pierce v. Merrill, 128 Cal. 464, 61 P. 64, 79 Am. St.Rep. 56; Cooke v. Mesmer, 164 Cal. 332, 342, 128 P. 917; 13 Cal.Jur. 110, sec. 22. In the text last cited it is said:

"The liability of the guarantor of an absolute and unconditional guaranty is fixed when the principal obligation matures and is not predicated upon the exhaustion by the creditor of his remedies against the principal debtor, or the exhaustion of other security for the debt; and it is immaterial whether the debtor can or cannot pay the debt."

■ In Moffett v. Miller et al., 119 Cal.App.2d 712, 260 P.2d 215, the California court referred to the principle stated in Bank of America Nat. Trust & Savings Ass'n v. McRae and also referred to Ingalls v. Bell, 43 Cal.App.2d 356, 110 P.2d 1068, in which the court discussed the California law prior to 1939, stating:

There was, prior to the amendment of Civil Code sections 2789 et seq., a marked difference between a contract of guaranty and one of indemnity. In a guaranty of payment the liability was fixed by the failure of the principal debtor to pay at maturity or at the time when payment was guaranteed. It was immaterial whether the debtor could or could not pay the debt.

North Dakota has not abolished the distinction between a guarantor and a surety, and the California cases cited are consistent with our interpretation of the statutes on guaranty and surety in State Bank of Grand Forks v. Bellamy, supra.

■ We therefore hold that Section 22–03–08 NDCC is not applicable to the facts in this case, since we have already held that the Defendants are guarantors under an absolute and continuing guaranty. However, even if we were to hold that the rights under Section 22–03–08 may be invoked by guarantors, this right is only available upon a showing that the same remedy is not available to the surety himself. Section 22–03–08 has been in effect in North Dakota since statehood, and this court has construed this section in a number of cases. In Bingham v. Mears, 4 N. D. 437, 61 N.W. 808, 27 L.R.A. 257, this court stated:

The general rule is that the surety has no right to insist that the creditor shall first proceed against the principal debt-

or, or any security which such debtor may have given him. Upon default the surety may at once be sued.

In this same case on rehearing, the court went into a full discussion of the history and interpretation of the rule of law embodied in Section 22–03–08 and denied the rehearing. After reading the lengthy history concerning this rule of law, it becomes clear that the rule was adopted to grant relief in exceptional cases where the creditor has recourse to assets that would not be available to the surety upon paying the debt and becoming subrogated to the rights of the creditor. In Yerxa v. Ruthruff, 19 N.D. 13, 120 N.W. 758, 25 L.R.A., N.S., 139, this court again discussed the rights of a surety and again sustained the holding in Bingham v. Mears, supra, by quoting approvingly from Taylor v. Beck, 13 Ill. 376, as follows:

There is no rule of the common law, nor principle of equity, that will enable a surety to relieve himself from liability by a simple request to the creditor to proceed against the principle. * * * There is no sound reason for permitting a surety to discharge himself by requesting the creditor to proceed against the principal. * * *

In Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288, this court cited Yerxa v. Ruthruff, supra, and approvingly quoted the last sentence of the above quotation. The guarantors have not shown by any evidence in this record that at the time they served their demand upon the creditor to sue the principal debtor, that the creditor had recourse to any property or assets that were not available to the guarantors upon payment of the note. They have not shown that they were prejudiced in any way by the creditor's failure to proceed against the principal, since they had the same privilege and opportunity to sue as the bank had. Consequently, even if the appellants would be considered sureties Section 22–03–08 would not exonerate them.

Next the guarantors contend that they were exonerated when the bank renewed the note on September 16, 1965. Under the terms of the guaranty, the guarantors became obligated to pay the notes as soon as the notes became due. Liability of the guarantors became fixed upon default by the principal. Demand was made upon them by the creditor for payment of the notes. Instead of paying the notes as obligated under the guaranty, the guarantors sought to forestall any action against themselves by demanding that the creditor bring action against the principal. The guarantors had no such right under the guaranty to require the creditor to sue the principal first and now have no right to complain about the creditor's refusal or neglect to bring action against the principal.

Guarantors cite Northern State Bank v. Bellamy, supra, as supporting their contention that a guarantor is only secondarily liable and as such, a guarantor is exonerated by the creditor extending time of payment without the guarantor's consent. We concur with the holding of Northern State Bank v. Bellamy. The holding in that case was based upon Section 41–09–02 of the NDCC, which was a part of the Negotiable Instruments Act, and which was repealed by adoption of the Uniform Commercial Code, effective July 1, 1966. This section prescribed how persons secondarily liable may be discharged, and subsection 6 of this section stated:

By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.

In the Northern State Bank v. Bellamy case, this court held that a guarantor is only secondarily liable, and further held that the Plaintiff Bank had for valuable consideration entered into an agreement to extend the time of payment with the principal debtor without the knowledge or con-

sent of the guarantor. The facts in the present case differ from Northern State Bank v. Bellamy in that we have no binding agreement for an extension of time for payment between the Plaintiff and the principal debtor. The renewal notes were accepted by the bank in order to keep the debt current, and not to keep the guarantors from paying the notes and commencing actions themselves against the debtor since demands for payment had been made upon the guarantors before the guarantors served their demand upon the bank to sue the principal debtor, and prior to September 16, 1965, when the creditor renewed the note which the guarantors now claim extended the time of payment so as to exonerate them from any liability.

The guaranty executed by the guarantors clearly contemplated a series of continuing transactions and as such, contemplated renewals of notes evidencing the loans or credit granted. The record shows that the notes were renewed as a regular course of business for a period of almost two years. The notes contained express provisions that the guarantors waive consent to renewals. The guarantors are bound by all the provisions of the original notes, as well as the provisions of their guaranty.

In a case with facts rather similar to the present case, the South Dakota Supreme Court, in Hirning v. Jacobsen, 51 S.D. 270, 213 N.W. 505, stated:

The rule is well established that, where a guaranty is continuing and absolute, the guarantor is not entitled to notice of each transaction in order to bind him. The statement that the guaranty is unconditional waives notice unless it is specifically provided for in the writing. * * * And this is particularly true where the guarantors are officers of the corporation whose debts are guaranteed, as they have opportunity equal to that of the guarantor for information on the subject.

It is also a well established rule that consent need not be explicit, but may be implied from the nature of the guaranty and the transactions in connection with the guaranty. The rule is stated in 38 Am.Jur.Guaranty, Section 93, pp. 1099–1100:

The rule that a guarantor is discharged, pro tanto, by a binding agreement between the debtor and creditor to extend the time of payment of the principal obligation rests on the assumption that the extension of time was made without the consent of the guarantor and thus may be of injury to the guarantor in having the debt payable later than anticipated. Therefore, when the extension was granted by the creditor to the debtor with the knowledge and consent of the Defendant, the guarantor is not discharged. * * * Consent of the guarantor to the extension of the time of payment of the debt need not have been explicit; nor need it have been contemporaneous with the agreement between creditor and debtor that the time should be extended. Consent to the extension of time may be expressly authorized in, or may be implied as incidental to, the guaranty contract. Where the dispute is as to whether extension of the time was contemplated or intended by the parties when the guaranty was executed, consideration is to be given to the nature of the guaranty as being continuing or otherwise, to the terms and provisions of the instrument, and to the circumstances attending the transactions.

The evidence in this case is undisputed that the guarantors, as officers of the principal debtor, had knowledge of the course of business between the principal and creditor and had knowledge of the notes that were given by the principal, and the various renewal notes that were executed. The evidence tends to indicate that the renewals, although made without the express consent of the guarantors, were made for the benefit of the guarantors rather than for the benefit of the creditor, since the guarantors had become directly liable upon maturity of each of the notes.

We must also point out that the guaranty executed by the guarantors did not specify any particular debt or time when the debt would mature. It was a continuing guaranty. Under these circumstances, the general rule stated in 38 C.J.S. Guaranty § 75 also applies:

> * * * Where there is nothing to show when the principal debt matures, there can be no such extension of time as to discharge the guarantor, and in such a case the taking of a note for the principal debt, payable at a specified time in the future, is not such an extension of time as will release the guarantor, although he has no notice of the agreement under which the note is given. So, also, where the guaranty is of a continuing nature and does not limit or restrict the period of credit, any reasonable change as to the length of the credit will not relieve the guarantor from his liability thereunder, unless the extended period materially changes the contract of guaranty.

 Finally, the guarantors urge the court to invoke the doctrine of equitable estoppel. The creditor, upon default of the principal, had made demand upon the guarantors to perform under their guaranty. The guarantors, instead of performing as obligated, countered by demanding that the creditor institute action against the principal. There was no duty upon the creditor to institute any proceedings against the principal. There is nothing in the record to show that the actions of the creditor, of which the guarantors complain, materially changed the contract of the guarantors or in any way impaired their rights or remedies as guarantors. The guarantors cannot now urge that the creditor be estopped from bringing action against them simply because it didn't do so promptly when the notes became due. If the guarantors felt at any time that their position or rights were becoming impaired by any action of the principal, all they had to do was pay the past due debt which is no more than they had agreed to do, and immediately resort to the principal for reimbursement. The facts presented do not constitute a case for the application of the doctrine of equitable estoppel.

The judgment appealed from is affirmed.

TEIGEN, C. J., ERICKSTAD and KNUDSON, JJ., and HAMILTON E. ENGLERT, District Judge, concur.

The Honorable ALVIN C. STRUTZ and the Honorable WM. L. PAULSON, Associate Justices, deeming themselves disqualified, did not participate; the Honorable ADAM GEFREH, Judge of the Third Judicial District, and the Honorable HAMILTON E. ENGLERT, Judge of the First Judicial District, sitting in their stead.