# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 64

Big Pines, LLC,                                    Plaintiff and Appellant

v.

Biron D. Baker, M.D., and
Biron D. Baker Family Medicine PC,      Defendants and Appellees

### No. 20190249

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable William A. Herauf, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

Grant T. Bakke (argued) and Shawn A. Grinolds (on brief), Bismarck, ND, for plaintiff and appellant.

Mark R. Western (argued), Fargo, ND, and James W. Martens (appeared), Bismarck, ND, for defendants and appellees.

**VandeWalle, Justice.**

[¶1]   Big Pines, LLC, appealed from a district court order denying its "Motion for Award of Attorneys' Fees and Costs." We reverse and remand.

I

[¶2]   Phoenix M.D., L.L.C., as landlord, entered into a lease agreement for real property with Biron D. Baker Family Medicine PC, as tenant, on May 3, 2011. The lease began on June 15, 2011, and ended on June 14, 2016. At the same time the lease was entered, Biron Baker signed a personal guaranty agreement making him personally liable for a breach of the terms of the lease.  Both the lease and guaranty were contained in the same document. Additionally, the lease contained a provision stating the landlord's entry into the lease was induced by the personal guaranty agreement, and the guaranty contained provisions contemplating the tenant's obligations under the lease and assignment of the lease and guaranty. Under the guaranty, the landlord was also entitled to recover "all costs and attorneys' fees incurred in attempting to realize upon [the guaranty]."

[¶3]   In August 2016, Big Pines, LLC purchased the property formerly leased by Baker Medicine from Phoenix. On October 13, 2016, Big Pines and Phoenix entered into an agreement entitled "ASSIGNMENT OF LEASE AGREEMENT." The agreement assigned all of Phoenix's "right, title and interest in that certain Lease Agreement dated May 3, 2011 entered into between [Phoenix and Baker Medicine]" to Big Pines. "Any and all other claims . . . against [Baker Medicine] under [the lease], including, but not limited to, for damage to real and/or personal property located at [the purchased property]" were assigned to Big Pines. The guaranty agreement was not specifically mentioned in the assignment agreement. However, the assignment stated a copy of the "Lease Agreement" was attached to the assignment as "Exhibit A." There is nothing in the record, and no evidence was presented to

1

the district court, indicating which agreement(s) were attached to the assignment as "Exhibit A."

[¶4] In March 2017, Big Pines contacted Baker regarding damages to the property in violation of the terms of the lease that resulted from Baker Medicine's tenancy. Baker denied any responsibility and refused to pay for the alleged damages. Big Pines filed suit against Baker and Baker Medicine in February 2018 claiming the property damages resulted from Baker Medicine's tenancy and were in violation of the terms of the lease. The case proceeded to trial, and at trial a jury found Baker and Baker Medicine liable for breaching the terms of the lease and awarded $18,750.00 in damages to Big Pines.

[¶5] Big Pines filed a post-trial motion under N.D.R.Civ.P. 54(e)(3) requesting the district court award Big Pines its attorney's fees for having to bring suit against Baker and Baker Medicine for breaching the terms of the lease. Baker and Baker Medicine opposed the motion. The court denied Big Pines' request for attorney's fees. The court reasoned that the lease and guaranty were separate agreements, that Big Pines was not a party to either agreement, and that Big Pines did not have a basis for claiming any benefit of an agreement it was not a part of. The court further determined the guaranty was not assigned to Big Pines because the assignment agreement only mentioned the lease and made no specific mention of the guaranty.

[¶6] On appeal, Big Pines argues the assignment agreement unambiguously assigned the lease and guaranty. In the alternative, Big Pines argues the meaning of the term "Lease Agreement" in the assignment is ambiguous, and a jury should decide whether the guaranty was assigned. Baker and Baker Medicine argue Big Pines failed to preserve the issue for appeal because it did not submit the issue to the jury at trial or request jury instructions on the issue, the district court did not err in determining the guaranty was not assigned to Big Pines, and the provision providing for attorney's fees in the guaranty is void as a matter of public policy under N.D.C.C. § 28-26-04.

2

## II

[¶7]   Assignments are interpreted in the same manner as contracts. *Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 8, 903 N.W.2d 61 (citing *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 8, 892 N.W.2d 193). Contract interpretation is governed by N.D.C.C. ch. 9–07. "The primary purpose in interpreting contracts . . . is to ascertain and effectuate the parties' or grantor's intent." *Hallin,* at ¶ 8 (citing *THR Minerals*, at ¶ 8).

> The parties' intent is ascertained from the writing alone if possible. The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law. When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent. When a contract's language is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is not admissible to alter, vary, explain, or change the contract. If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent become questions of fact.

*Id.* at ¶ 9 (citations and quotations omitted).

[¶8]   "A contract is ambiguous when rational arguments can be made for different interpretations." *Nichols v. Goughnour*, 2012 ND 178, ¶ 12, 820 N.W.2d 740 (quoting *Gawryluk v. Poynter*, 2002 ND 205, ¶ 9, 654 N.W.2d 400). "When a contract is ambiguous, circumstances at the time of contracting may be used as evidence to construe it." *Riedlinger v. Steam Bros., Inc.*, 2013 ND 14, ¶ 17, 826 N.W.2d 340 (quoting *Williston Educ. Ass'n v. Williston Pub. Sch. Dist.*, 483 N.W.2d 567, 570 (N.D. 1992)). "Whether a contract is ambiguous is a question of law for the court to decide." *Nichols*, at ¶ 12 (quoting *Gawryluk*, at ¶ 9). "On appeal, we independently review a contract to determine if it is ambiguous." *Id.*

3

[¶9]  "Instruments that have been executed at the same time, by the same parties, in the course of the same transaction, and concerning the same subject matter, may be read and construed together." *Nichols v. Goughnour*, 2012 ND 178, ¶ 13, 820 N.W.2d 740 (citing *Trengen v. Mongeon*, 206 N.W.2d 284, 286 (N.D. 1973)).  Under N.D.C.C. § 9-07-07, "Several Contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together."

> In *First Nat'l Bank v. Flath*, 10 N.D. 281, 287, 86 N.W. 867, 870 (1901), this Court interpreted that language and stated the requirement that several contracts are to be "taken together" does not mean they are to be joined into a single contract.  This Court said the language means that contracts "are to be taken together" for the purpose of interpreting either the transaction to which they relate, or the several contracts themselves.  *Id.* This Court explained the statute does not purport to destroy the separate identity of the several contracts and does not unite two or more contracts relating to a transaction into a single contract.  *Id.*

*Nichols*, at ¶ 13.

[¶10] Big Pines argues the guaranty is integrated in the lease and was assigned along with the lease. We agree for the reasons stated below. The document is titled "<u>Lease Agreement</u>," which is centered at the beginning of the document and is in substantially larger text than appears anywhere else in the document. The guaranty is titled "*Personal Guaranty Agreement*," which is also centered but is in the same size text as all the other headings in the document. Furthermore, the document is a total of twenty pages with the lease beginning on page one and the guaranty beginning on page eighteen. The lease and guaranty are consecutively paginated with the guaranty immediately succeeding the signature blocks of the lease on page eighteen of the document. There is no white space between the signature blocks of the lease and the beginning of the guaranty, and the guaranty begins on the same page that the lease ends. The lease also references three exhibits and states the exhibits are attached to the document. The exhibits are attached at the end of the document after the guaranty. These facts indicate the parties intended for the guaranty to be part of the same document and integrated into the lease.

4

[¶11] The language and provisions in the lease is further evidence the guaranty was assigned. The lease contains a provision explicitly stating the landlord's entry into the lease was induced by the personal guaranty of tenant's performance of the terms of the lease.

[¶12] In addition, the guaranty contains provisions indicating the guaranty was integrated in the lease. First, the guaranty states, "This Guaranty is given by the Guarantor to induce the Landlord to enter into the *attached* lease agreement . . . ." (Emphasis added). By saying the guaranty is attached to the lease, the language in the guaranty implies the guaranty is part of the lease, not a wholly separate document that is incorporated by reference. Second, the guaranty states the guaranty is "a continuing Guaranty and shall not be revoked by the Guarantor," and the guaranty "will remain effective until all obligations guaranteed by this Guaranty are completely discharged." And third, the guaranty states, "V. Assignment. This Guaranty . . . (b) shall insure to the Landlord, its successors and assigns, and (c) may be enforced by any party to whom all or any part of the liabilities may be sold, transferred, or assigned by the Landlord."

[¶13] The guaranty provides:

>     I. Obligations. . . . [T]he Landlord intends to rely on this Guaranty, the Guarantor absolutely and unconditionally guarantees prompt and satisfactory performances of the *lease agreement*, in accordance with all of its terms and conditions, by the Tenant under the terms set forth below. If the Tenant should default in performance of its obligations under the *lease agreement* according to its terms and conditions, the Guarantor shall be liable to the Landlord for . . . all costs and attorney's fees incurred in attempting to realize upon this Guaranty.

(Emphasis added). The guarantor's "obligations" under the guaranty are all in reference to the liabilities in the lease. Therefore, the "liabilities" referenced in section V(c) of the guaranty relate to the liabilities provided for in the lease. This is the only logical interpretation of the term "liabilities" in this instance because without the lease, the guaranty does not itself create any liabilities.

5

Stated differently, the guarantor cannot breach the terms of the guaranty without first breaching the terms of the lease. We interpret section V(c) as saying a party to whom the lease is assigned may enforce the "obligations" provided for in the guaranty.

[¶14] Moreover, Phoenix assigned all of its rights, title, and interest in the lease to Big Pines. The assignment assigned all claims "*including, but not limited to, for damage to real and/or personal property*" to Big Pines. The assignment explicitly contemplates and assigns to Big Pines any claims against Baker Medicine for property damage.

[¶15] The district court erred in interpreting the lease and guaranty as separate agreements.

## III

[¶16] Notwithstanding, Baker argues the attorney's fees provided for in the guaranty agreement are void under N.D.C.C. § 28-26-04. Parties are generally free to enter into an agreement for payment of attorney's fees in a civil action. *See* N.D.C.C. § 28-26-01(1). However, provisions in debt instruments providing for payment of attorney's fees are void under § 28-26-04, which states:

> Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorney's fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose such mortgage or security agreement, is against public policy and void.

We have previously held that "'evidence of debt,' as contemplated by N.D.C.C. § 28-26-04, relates to a written instrument importing on its face the existence of debt, an acknowledgment of that debt, and a promise of payment." *Candee v. Candee*, 2019 ND 94, ¶ 11, 925 N.W.2d 423 (quoting *T.F. James Co. v. Vakoch*, 2001 ND 112, ¶ 16, 628 N.W.2d 298). "The general term, 'evidence of debt,' 'despite its seeming breadth,' includes *only instruments similar to those specifically listed* in N.D.C.C. § 28-26-04: a note, bond, mortgage, or security agreement." *Id.* (Emphasis in original). In at least one instance, this Court has concluded that a personal guaranty agreement was other evidence of debt

6

under § 28-26-04. *See Farmers Union Oil Co. v. Maixner*, 376 N.W.2d 43, 49 (N.D. 1985).

[¶17] In *Maixner*, New England Agri-Services' account with Farmers Union Oil Co. was overdue and delinquent in the amount of $22,036.78. *Id.* at 45. In exchange for Farmers Union's forbearance from bringing suit against Agri-Services for the outstanding debt, Maixner, as Agri-Services' agent, executed and delivered a "PERSONAL GUARANTEE" agreement to Farmers Union guarantying payment of the debt. *Id.* The agreement read:

> The undersigned does represent to Farmers Union Oil Company of New England that he is one of the principals or owners in the business organization known as Agri-Business, Inc. Further, in consideration of the forbearance of Farmers Union Oil Company of New England from bringing suit on the account of that business organization at this time, the undersigned does personally and individually guarantee payment of all payments due upon the business credit account with Farmers Union Oil Company of New England, together with payment of any and all expenses incurred by creditors as a result of non-payment of said credit account when due.

*Id.* Agri-Services failed to pay the outstanding debt, and Farmers Union filed suit. *Id.* Farmers Union prevailed and, in addition to the outstanding debt, Farmers Union was awarded $750.00 in attorney's fees. *Id.* We held the personal guarantee executed and delivered by Maixner was other evidence of debt "because the guarantee relate[d] to the payment of debt," and the $750.00 in attorney's fees were awarded in violation of § 28-26-04. *Id.* at 49.

[¶18] The personal guaranty in this case is different than the personal "guarantee" in *Maixner*. The "guarantee" in *Maixner* was executed because of an existing debt and was a promise to pay that existing debt in exchange for forbearance from bringing suit by Farmers Union. The guaranty here was executed at the same time as the lease. There was no existing debt when the lease or guaranty was executed, and the guaranty was not a promise to pay an existing debt. The provision for attorney's fees in the personal guaranty agreement is not void under N.D.C.C. § 28-26-04.

7

## IV

[¶19] Appellees' remaining arguments are without merit and we decline to address them.

## V

[¶20] We reverse and remand for an appropriate award of attorney's fees.

[¶21] Gerald W. VandeWalle
Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers
Jon J. Jensen, C.J.