FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 23, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 228

American Federal Bank,　　　　　　　　　　　Plaintiff and Appellee

v.

William Grommesh and Jon W. Pansch,　　　　Defendants and Appellants

## No. 20210080

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

John M. Krings, Jr. (argued) and Asa K. Burck (on brief), Fargo, ND, for plaintiff and appellee.

Joel M. Fremstad, Fargo, ND, for defendants and appellants.

**Crothers, Justice.**

[¶1]   Defendants William Grommesh and Jon Pansch appeal from summary judgment entered in favor of American Federal Bank in its action to enforce four guaranties. The defendants argue the district court erred in granting summary judgment because the court misinterpreted the guaranties and genuine issues of material fact exist regarding the defendants' defenses. We affirm.

I

[¶2]   In 2012, Sarah and Jerret Julsrud started Jerret's Plumbing, L.L.C. ("Jerret's"). The Julsruds obtained financing from American Federal to start Jerret's, including a $20,000 operating loan and a $200,000 loan to purchase assets. Grommesh, Jerret Julsrud's father, and Pansch, Sarah Julsrud's father, each signed two guaranties related to the loans, one guaranty up to $15,000 and a second guaranty up to $125,000. The promissory note for the operating loan stated it was for a revolving line of credit. Terms of the operating loan were modified multiple times, including increasing the principal balance and extending the maturity date.

[¶3]   Jerret's loans went into default and in 2019 American Federal sued the defendants to enforce all four guaranties, alleging the defendants guaranteed payment and performance of Jerret's outstanding indebtedness to American Federal. American Federal claimed the amount of Jerret's outstanding obligations exceeded the guaranty amounts and requested the district court enter judgment in its favor against the defendants, jointly and severally, for $135,000.[1] The defendants filed a joint answer, disputing American Federal's claims and asserting various defenses.

---

[1] American Federal's complaint and motion for summary judgment requested the district court enter judgment in its favor against the defendants for $135,000. American Federal stated the guaranties were limited to $15,000 and $120,000. We assume this is a typographical error because the two

[¶4]  American Federal moved for summary judgment, arguing Jerret's had multiple outstanding loans with a combined total balance of $160,312.26 plus interest, Jerret's outstanding obligations were in default, the defendants guaranteed Jerret's outstanding indebtedness up to $140,000 each, the defendants never revoked their guaranties, and judgment should be entered as a matter of law in favor of American Federal. The defendants opposed American Federal's motion and moved for summary judgment in their favor, arguing the guaranties for $125,000 related to the asset loan, the asset loan was paid in full and never extended or renewed, and the guaranties ended when the loan was paid off. The defendants also argued the $15,000 guaranties were limited to the operating loan, the operating loan was paid down to zero, and the loan went away when it matured in June 2013. They asserted various defenses apply and genuine issues of material fact exist relating to their defenses. After a hearing on the motions and additional time for discovery, the parties filed supplemental briefs on the motions.

[¶5]  The district court granted summary judgment in favor of American Federal. The court considered the language of the guaranties and determined the guaranties are unambiguous. The court concluded the guaranties are continuing guaranties, and they cover debt acquired by Jerret's after the initial operating and asset loans. The court found the total owed to American Federal as of January 2021 was $148,875.78, each of the defendants guaranteed $140,000 of Jerret's debt, and American Federal was entitled to a summary judgment against each defendant for $140,000. Judgment was entered.

II

[¶6]  The standard for reviewing a district court's decision on a motion for summary judgment is well-established:

> "Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences

guaranties each defendant signed total $140,000 and American Federal referred to the correct amounts in later filings.

2

that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record."

*Solberg v. McKennett*, 2021 ND 44, ¶ 6, 956 N.W.2d 767 (quoting *Aftem Lake Dev., Inc. v. Riverview Homeowners Ass'n*, 2020 ND 26, ¶ 8, 938 N.W.2d 159).

## III

[¶7] The defendants argue the district court erroneously concluded the guaranties are unambiguous. The defendants claim the guaranties refer to the "Note" and define "Note" as the specific 2012 loans, which limits the guaranties to covering only Jerret's 2012 loans. They contend the original debt was paid off, any after-acquired debt is not covered by the guaranties, and they are not liable to American Federal under the guaranties. They also claim there was evidence from the defendants, the Julsruds, and former American Federal President Donald Abarr that the parties' intent was to limit the guaranties to cover only specific debts.

[¶8] Generally, the interpretation of a written contract to determine its legal effect is a question of law. *Discover Bank v. Hornbacher*, 2020 ND 260, ¶ 3, 952 N.W.2d 83. We apply the general rules of contract construction to interpret guaranties. *See Big Pines, LLC v. Baker*, 2020 ND 64, ¶ 7, 940 N.W.2d 616.

3

[¶9]  We ascertain the parties' intent from the writing alone if possible. *Big Pines*, 2020 ND 64, ¶ 7; N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. "When a contract's language is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is not admissible to alter, vary, explain, or change the contract." *Big Pines*, ¶ 7 (quoting *Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 9, 903 N.W.2d 61). A contract is ambiguous if rational arguments can be made for different interpretations of the term, phrase, or clause in question. *Estate of Seidel v. Seidel*, 2021 ND 6, ¶ 16, 953 N.W.2d 636. Extrinsic evidence may be considered to determine the parties' intent if a contract is ambiguous. *Id.* A contract is interpreted as a whole to give effect to every part if practicable. N.D.C.C. § 9-07-06. Several contracts related to the same matter between the same parties, made as part of substantially one transaction, are to be read and construed together. N.D.C.C. § 9-07-07. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." N.D.C.C. § 9-06-07.

[¶10] Undisputed evidence established Grommesh and Pansch each signed two guaranties related to Jerret's debt to American Federal. They each signed one guaranty for up to $15,000 related to Jerret's operating loan and a second guaranty for up to $125,000 related to Jerret's asset loan. The four guaranties contain identical language, except for the guarantor's name, the limit on the amount of the guarantor's liability, and references to a specific loan number or promissory note.

[¶11] The defendants' guaranties state, "For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents."

4

[¶12] The defendants' guaranties for the operating loan define "Note" as "the promissory note dated June 1, 2012, in the original principal amount of $20,000.00 . . . together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement." The guaranties for the asset loan include the same definition, except they refer to the promissory note "dated June 14, 2012, in the original principal amount of $200,000.00."

[¶13] This definition of "Note" refers to the initial loan, but also renewals, extensions, and modifications. The plain language of the guaranties required the defendants to guarantee the performance and discharge of Jerret's obligations under these two notes and any renewals, extensions, and modifications of those notes.

[¶14] The guarantors also unconditionally guaranteed payment of the guarantor's share of the borrower's indebtedness. The guaranties define "Indebtedness" as:

> "[A]ll of the principal amount outstanding from time to time and at any one or more times . . . arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower . . . owes or will owe Lender. 'Indebtedness' includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, . . . other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations . . . ."

"Guarantor's share of the Indebtedness" is defined as:

> "[A]n amount not to exceed Fifteen Thousand & 00/100 Dollars ($15,000.00) of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals."

5

The guaranties related to the asset loan include the same language and define the guarantor's share of the indebtedness as an amount not exceeding $125,000. The guarantor's share of indebtedness is limited in total dollars, but no language limits the guaranties to only the original loan. The guaranties expressly includes other debts, including debts arising in the future.

[¶15] The guaranties further state:

> "THIS IS A 'CONTINUING GUARANTY' UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME."

The plain and unambiguous language states that the guaranties apply to existing and future indebtedness, and that the guarantor's obligations and liability will not terminate even when the outstanding indebtedness has a zero balance.

[¶16] The terms also address the duration of the guaranties and allow revocation of the guaranty, stating:

> "This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. . . . It is anticipated that fluctuations may occur in the aggregate amount

6

of the indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty."

The guaranties unambiguously did not terminate if the amount of the indebtedness is reduced to zero dollars.

[¶17] The guaranties authorize the lender to make additional loans, extend additional credit, or alter the terms of the loans, all without giving the guarantor notice and without reducing the guarantor's liability. The guaranties provide:

"Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower . . . or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness . . . ."

[¶18] All four of the defendants' guaranties are continuing. A "continuing guaranty" is "a guaranty relating to a future liability of the principal under successive transactions which either continue the liability or from time to time renew it after it has been satisfied." N.D.C.C. § 22-01-01. "Where a guaranty is continuing and absolute, the guarantor is not entitled to notice of each transaction in order to bind him. The statement that the guaranty is unconditional waives notice unless it is specifically provided for in writing." *First Nat'l Bank and Trust Co. of Dickinson v. Meyer Enters., Inc.*, 427 N.W.2d 328, 330 (N.D. 1988) (quoting *State Bank of Burleigh Cty. v. Porter*, 167 N.W.2d 527, 536 (N.D. 1969)). The plain language of the guaranties apply to all of Jerret's indebtedness and authorize American Federal to make additional loans or extend additional credit to Jerret's without reducing the defendants' liability under the guaranties and without giving notice to the defendants.

7

[¶19] Read as a whole, the guaranties are not ambiguous. The clear meaning of the words of a guaranty cannot be ignored, and unless the guaranty is ambiguous, its interpretation is governed by the writing alone. *Meyer Enters.*, 427 N.W.2d at n.3. Because the guaranties are unambiguous, extrinsic evidence about whether the guaranties were to terminate when the initial loans were paid off or whether they applied to future loans was not admissible. The plain language of the guaranties did not limit their application to the original loans, and they did not terminate when the initial loans were paid off. The district court did not err in deciding the guaranties are unambiguous.

## IV

[¶20] The defendants argue several defenses preclude summary judgment in favor of American Federal. They contend genuine issues of material fact exist about the defenses, and the district court erroneously granted summary judgment dismissing their defenses.

## A

[¶21] The defendants argue the district court impermissibly weighed testimony and cherry-picked facts in dismissing their defenses. They contend parol evidence may be considered where there are allegations of mistake and fraud, and the court erred in determining as a matter of law that there was no genuine issue of material fact about mistake or fraud. They contend evidence of mistake or fraud was presented from Donald Abarr, the former President of American Federal and the loan officer for Jerret's operating and asset loans, Jerret Julsrud, and the two defendants.

[¶22] American Federal argues admission of parol evidence about fraud and mistake was not admissible because the guaranties are unambiguous, the defendants did not plead these affirmative defenses, they did not make any argument about fraud or mistake until they filed a supplemental brief months after the summary judgment hearing, and American Federal objected to the attempts to argue the unpled affirmative defenses at that time.

[¶23] The defendants did not include an affirmative defense or claim of fraud or mistake in their answer, and they did not move to amend their pleading. They did not meet the particularity requirement of N.D.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). They also did not argue fraud or mistake in their motion for summary judgment, but they claimed it was permissible to look at extrinsic evidence, citing *Citizens State Bank-Midwest v. Symington*, 2010 ND 56, ¶¶ 20-21, 780 N.W.2d 676. American Federal responded arguing the defendants did not argue fraud or mistake in their brief and the district court does not have authority to order reformation when the borrower has not asserted grounds for reformation. The defendants expressly raised the issue of mutual mistake for the first time in their supplemental brief on the motions for summary judgment, arguing reformation would be warranted on the basis of mutual mistake. American Federal also filed a supplemental brief arguing the evidence confirmed the guaranties were not limited to the 2012 loans, the defendants did not allege fraud or mistake or seek reformation in all prior briefs or pleadings, and the court had no authority to order reformation when defendants failed to demonstrate grounds that support reformation.

[¶24] The district court considered the defendants' mistake argument. The court explained "While the Defendants have provided citations to the record where Abarr indicates he believes The Guaranties covered only the initial debt, AFB has cited to Abarr's deposition testimony where he admits he did not tell the Defendants that The Guaranties did not cover future debts incurred by Jerret's."

[¶25] Under the facts of this case, it is unnecessary to decide whether a defendant can rely on an unpled defense of fraud or mistake during the summary judgment stage of litigation. Throughout these proceedings American Federal objected to the district court considering the defenses. Therefore, the defenses were not considered by the court with the consent of the parties, and any existence of unpled defenses did not prevent the court from granting summary judgment in favor of American Federal.

B

[¶26] The defendants contend American Federal did not move for summary judgment on the affirmative defenses of breach, failure of consideration, impossibility, frustration of purpose, failure to mitigate damages, payment, estoppel, and waiver. They contend it was improper to grant summary judgment without the defendants being allowed to brief the issues.

[¶27] American Federal moved for summary judgment requesting the district court enter a judgment in its favor for the balances outstanding on Jerret's indebtedness. American Federal asserted there were no genuine issues of material fact and it was entitled to judgment in its favor against each defendant for $140,000. It also claimed the defendants raised various affirmative defenses in their answer to the complaint and the defenses were meritless. American Federal specifically argued the defenses of unjust enrichment, laches, accord and satisfaction, unclean hands, setoff, lack of consideration, and guarantor exoneration should be stricken. The defendants also moved for summary judgment, arguing judgment should be granted in their favor. They argued American Federal failed to challenge some of the affirmative defenses and they were entitled to a trial on those defenses.

[¶28] The party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Swenson v. Raumin*, 1998 ND 150, ¶ 9, 583 N.W.2d 102. The party opposing the motion may not simply rely on the pleading and unsupported, conclusory allegations; rather, they must present competent admissible evidence raising an issue of material fact and must draw the court's attention to relevant evidence in the record raising a material fact. *Id.* "Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* "On any matter 'constituting an avoidance or affirmative defense' under NDRCivP 8(c), the party asserting it has the responsibility to set forth specific facts showing that there is a genuine issue for trial on that defense." *Gress v. Kocourek*, 427 N.W.2d 815, 816 (N.D. 1988).

10

[¶29] American Federal argued no genuine issues of material fact existed and it was entitled to judgment as a matter of law. The defendants had the burden to raise issues of material fact related to their defenses and to argue the defenses applied to American Federal's claim. The defendants generally argued to the district court that American Federal did not move to strike the defenses of breach, failure of consideration, impossibility, frustration of purpose, failure to mitigate damages, payment, estoppel, or waiver; and therefore they were entitled to a trial on those defenses. However, they did not present further argument or set forth specific facts showing that there was a genuine issue of material fact for trial on those defenses. The defendants had an opportunity to brief these defenses and they failed to show there were issues of material fact related to the defenses. The district court did not err in dismissing these defenses.

C

[¶30] The defendants argue there are genuine issues of material fact about the defense of laches because American Federal continued to extend lines of credit to Jerret's and did not give the defendants notice.

[¶31] A "stale claim" may be barred by laches, an equitable affirmative defense. *Stenehjem ex rel. State v. Nat'l Audubon Soc'y, Inc.*, 2014 ND 71, ¶ 12, 844 N.W.2d 892. Laches is a delay of time in commencing an action that disadvantages or prejudices the adverse party because of a change in conditions during the delay. *Id.* "Laches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to another." *Id.* (quoting *Sall v. Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378). "The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state." *Stenehjem*, ¶ 12 (quoting *Bakken v. Duchscher*, 2013 ND 33, ¶ 19, 827 N.W.2d 17). The party asserting laches as a defense has the burden to prove he was so prejudiced during the delay that he cannot be restored to the status quo. *Stenehjem*, ¶ 12.

11

[¶32] The defendants claim they would have had an opportunity to protect themselves from any ongoing liability if American Federal provided them notice it was continuing to extend credit to Jerret's. The plain language of the guaranties authorized American Federal to make additional loans or extend additional credit to Jerret's without giving the defendants notice and without limiting the defendants' liability. The defendants failed to show a genuine issue of material fact related to their laches defense.

D

[¶33] The defendants argue disputed factual issues exist relating to their accord and satisfaction defense.

[¶34] Accord and satisfaction is an affirmative defense, and the party asserting the defense has the burden of proving the defense. *State by Workforce Safety and Ins. v. Oden*, 2020 ND 243, ¶ 44, 951 N.W.2d 187. Accord and satisfaction is "[a] method of discharging a contract or cause of action by which the parties agree to give and accept something in settlement of a claim or demand of one against the other, where they thereafter perform such agreement." *In re Estate of Sande*, 2020 ND 125, ¶ 14, 943 N.W.2d 826. "An essential element of 'accord and satisfaction' is an agreement evidencing the parties' mutual assent." *Oden*, ¶ 45. "Summary judgment is appropriate when a party bearing the burden of proof at trial fails to establish the existence of a material factual dispute on an essential element." *Id.*

[¶35] The defendants claim the defense applies because evidence shows American Federal accepted new guaranties from Sarah and Jerret Julsrud for subsequent loans, American Federal did not require new guaranties from the defendants, and subsequent loan agreements indicated the defendants were not guarantying those loans. The defendants failed to present any evidence of an agreement between American Federal and the defendants settling a claim. The district court did not err in dismissing this defense.

12

E

[¶36] The defendants argue factual issues exist relating to their unclean hands defense. They claim there was evidence Jerret Julsrud forged Sarah Julsrud's signature on documents in the presence of American Federal employees, American Federal never gave the defendants notice of repeated extensions of credit to Jerret's, and a current bank employee told Jerret Julsrud that the defendants had no further obligations in 2017 after the asset loan was paid in full.

[¶37] "A person cannot take advantage of that person's own wrong." N.D.C.C. § 31-11-05(8). Generally, "the doctrine of unclean hands is applicable only where the party seeking to invoke it was injured by the alleged wrongful acts of the other party." *Jacobsen v. Pedersen*, 190 N.W.2d 1, 4 (N.D. 1971).

[¶38] The guaranties are unambiguous and apply to future loans without notice to the defendants and do not terminate when the initial loans have a zero balance. Although the defendants claim American Federal was aware Sarah Julsrud's name was forged on some loan documents, they do not allege American Federal committed wrongful acts relating to the guaranties. *Cf. Advanced Irrigation, Inc. v. First Nat'l Bank of Fargo*, 366 N.W.2d 783, 785 (N.D. 1985) (holding bank was not barred from recovering from plaintiff on promissory notes under doctrine of "unclean hands" even though a jury found the bank guilty of fraud and deceit, where verdict indicated bank's deceit was not related to the loans the bank made to the plaintiff). The defendants have not presented evidence that they are the victims of American Federal's alleged wrongdoing. The district court did not err by granting summary judgment dismissing this defense.

F

[¶39] The defendants argue evidence created a factual issue about their defense of lack of consideration. They claim the guaranties were not entered into at the same time as the original loan obligations, and therefore the original obligations were not consideration for the guaranties.

13

[¶40] Whether consideration existed is a question of law. *Frontier Fiscal Servs., LLC v. Pinky's Aggregates, Inc.*, 2019 ND 147, ¶ 19, 928 N.W.2d 449. Good consideration is any benefit conferred on the principal obligor or detriment suffered by the creditor. *Id.* Separate consideration is not necessary when the guaranty is entered into at the same time or is a part of the same transaction as the principal obligation. N.D.C.C. § 22-01-03; *First Bank of N.D. (N.A.) Jamestown v. Scherbenske*, 375 N.W.2d 156, 158 (N.D. 1985). "A guaranty, although executed subsequently to the creation of the principal obligation, if given in fulfillment of an agreement on the faith of which the principal obligation was created, is deemed contemporaneous in effect and requires no other consideration." *Porter*, 167 N.W.2d at 531.

[¶41] The defendants contend factual issues exist about whether the guaranties were entered at the same time as the original obligation. They cite facts showing some guaranties were undated and others were dated days after the loan. As is relevant to this action, the defendants' $15,000 guaranties are dated June 1, 2012, and the initial $20,000 operating note was dated June 1, 2012. The defendants' $125,000 guaranties are dated June 14, 2012, and the initial $200,000 asset note is dated June 14, 2012. The business loan agreements required the guaranties from the defendants before disbursement of the loan proceeds. The guaranties were part of the same transaction as the initial loans. *See Porter*, 167 N.W.2d at 531 (considering N.D.C.C. § 22-01-03 and holding no other consideration was required when note was dated September 4 and guaranty was executed on September 17); 38A C.J.S. *Guaranty* § 28 (2021) (explaining a guaranty may be supported by the same consideration as the principal contract even if the guaranty was executed after the principal contract if it was executed pursuant to a prior understanding and was an inducement to the execution of the principal contract). The district court did not err in dismissing this defense.

G

[¶42] The defendants argue genuine issues of material fact exist relating to their exoneration defense. They argue their obligations ceased when the two original loans were paid off. They contend the language of the guaranties

14

stating they did not expire when the balance was reduced to zero only applied during the term of the initial loan.

[¶43] A guarantor may be exonerated under N.D.C.C. § 22-01-15, which provides:

> "A guarantor is exonerated, except insofar as the guarantor may be indemnified by the principal, if, by any act of the creditor without the consent of the guarantor:
> 1. The original obligation of the principal is altered in any respect; or
> 2. The remedies or rights of the creditor against the principal in respect thereto are impaired or suspended in any manner."

[¶44] The guaranties were continuing, unambiguously applied to future loans, and did not expire until revoked by the guarantors. Under the terms of the guaranties, the defendants consented to the guaranties applying to extensions of the initial loans and new loans without notice from American Federal. *See Porter*, 167 N.W.2d at 536-37 (holding guarantors consented to renewals and were not exonerated because guaranty was a continuing guaranty). The district court did not err in dismissing this defense.

V

[¶45] We conclude the guaranties are unambiguous and there were no genuine issues of material fact about any of the defendants' asserted defenses. The district court's judgment is affirmed.

[¶46] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

I concur in the result.
Gerald W. VandeWalle

15