# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 135

Randy J. Axvig, Susan M. Axvig, as
Trustees of the Randy J. Axvig and
Susan M. Axvig Revocable Living Trust,                      Plaintiffs and Appellees

v.

Dorothy Czajkowski,                                        Defendant and Appellant

and

all unknown persons having or claiming
an estate or interest in, or lien or encumbrance,
upon the property described in the Complaint,
whether as heirs, devisees, legatees, or
personal representatives of deceased persons,              Defendants

## No. 20250004

Appeal from the District Court of Golden Valley County, Southwest Judicial
District, the Honorable James D. Gion, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen, Justice
McEvers, and District Judge Hovey joined. District Judge Brady filed a
dissenting opinion.

Bruce A. Selinger and Kristen Desilets, Dickinson, N.D., for plaintiffs and
appellees; submitted on brief.

Grant D. Adkins, Bismarck, N.D., for defendant and appellant; submitted on
brief.

**Tufte, Justice.**

[¶1]   Czajkowski appeals from an amended judgment entered after the district court awarded summary judgment in favor of the Axvigs, cancelling a contract for deed. On appeal, Czajkowski argues the court erred by concluding the Axvigs were allowed to proceed by court action without providing notice and opportunity to cure default. Alternatively, Czajkowski argues the court abused its discretion by failing to allow a redemption period. We reverse the amended judgment.

I

[¶2]   On August 8, 2016, Donald Neuens entered into a contract for deed with Czajkowski for the sale of property located in Golden Valley County, North Dakota (the "property"). Under the contract, Czajkowski agreed to the sum of $60,000 for the property, to make a down payment, to pay the remaining balance at an interest rate of 6% in consecutive monthly installments, and to pay the property taxes. After Neuens died, the Axvigs purchased his interest from Neuens' estate.

[¶3]   The Axvigs initiated a quiet title action against Czajkowski to cancel the contract for deed, alleging Czajkowski "abandoned the Subject Property," "failed to make the required payments," and "failed to pay the real estate taxes." Czajkowski answered the complaint, asserting the Axvigs failed to provide notice of default and an opportunity to cure default as required by the contract. Czajkowski affirmatively asserted the defenses, among others, that the Axvigs failed to comply with N.D.C.C. ch. 32-18, requiring written notice of cancellation of contract for deed, requiring time to correct default, and requiring cancellation of the contract be recorded. *See* N.D.C.C. §§ 32-18-01, 32-18-04, & 32-18-05. Czajkowski filed a counterclaim, asserting breach of contract for failure to provide notice of default and an opportunity to cure default.

[¶4]   The Axvigs filed a motion for summary judgment, arguing Czajkowski breached the contract for deed by "failing to make the required monthly

1

payments and by not paying the property taxes for three years" and they were entitled to cancellation of the contract for deed. Czajkowski responded to the motion for summary judgment, arguing the Axvigs failed to follow the notice of default and opportunity to cure provision of the contract for deed. The district court concluded the contract was cancelled and awarded the property to the Axvigs. The district court entered amended findings and an amended judgment. Czajkowski appeals.

## II

[¶5] Our standard for reviewing a grant of summary judgment is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Berger v. Sellers*, 2023 ND 171, ¶ 7, 996 N.W.2d 329 (citation omitted).

[¶6] Czajkowski concedes default under the contract for deed. A dispute of material fact does not exist regarding default under the contract. The parties dispute the interpretation of the contract, and whether Czajkowski was entitled to notice and an opportunity to cure the default.

2

[¶7] Czajkowski argues the district court's interpretation of the contract for deed was erroneous. She argues the court erred by concluding the contract for deed's notice and opportunity to cure provision was "ineffectual," disregarding the parties' intent and North Dakota's policy of favoring opportunities to cure default and avoid forfeiture in land contracts. The Axvigs argue the contract is unambiguous and allows them to proceed by court action without notice and an opportunity to cure the default.

[¶8] "Generally, the interpretation of a written contract to determine its legal effect is a question of law. We apply the general rules of contract construction." *Am. Fed. Bank v. Grommesh*, 2021 ND 228, ¶ 8, 968 N.W.2d 164 (internal citation omitted). "We ascertain the parties' intent from the writing alone if possible." *Id.* ¶ 9. "When a contract's language is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is not admissible to alter, vary, explain, or change the contract." *Id.* (citation omitted). "A contract is ambiguous when rational arguments can be made for different interpretations." *Higgins v. Lund*, 2025 ND 47, ¶ 44, 17 N.W.3d 828 (citation omitted). "Whether a contract is ambiguous is a question of law for the court to decide. On appeal, we independently review a contract to determine if it is ambiguous." *Id.* (citation omitted).

[¶9] In the event of default, the contract for deed states:

> Time is of the essence of this Agreement. If the BUYER should fail to perform fully and promptly any of the terms and provisions of this Agreement, and such failure to perform shall continue for a period of thirty (30) days after written notice by the SELLER specifying the default, the SELLER will again send notice to the BUYER of the default. If the BUYER cures the default within the first thirty (30) days after the first notice, it shall have no effect upon this Contract. If the BUYER fails to cure the default within the second thirty (30) day period after the second notice of default by SELLER is received, SELLER may, at his option, demand the entire remaining balances due under this Agreement and to cancel this Agreement in accordance with the laws of the State of North Dakota. In such an

event the SELLER may thereupon, without further notice immediately take possession of the above described property and BUYER agrees that he will immediately surrender possession of said property to the SELLER and will vacate the same promptly and peaceably.

In the event of such forfeiture and cancellation of this Agreement, as provided above, all sums paid hereunder by the BUYER, and all improvements made on the property by the BUYER, shall become the property of SELLER, and shall be deemed to be the stipulated rental for the occupancy and use of the property by the BUYER and as liquidated damages for the breach of this Agreement.

The specifications of remedies available to the SELLER upon default as provided in this Agreement are not exclusive. The SELLER may, at his option, employ all other remedies allowed by law or in equity, including specific performance of this Agreement.

[¶10] The district court concluded the "language of the Contract for Deed is unambiguous" and "Section 15 of the Contract for Deed allows Axvigs to proceed as they have in this breach of contract action." Regarding interpretation of the contract, the court explained:

Although the last part of Section 15 seems to contradict the first part of Section 15, this seems to mirror North Dakota law. As such, the last part of Section 15 does allow Axvigs to proceed as they have in this breach of contract action, despite the detailed notice of default provision in the first part of Section 15. This position is supported by the plain language in Section 15 of the contract for deed and applies regardless of the inclusion of the analysis of N.D.C.C. ch. 32-18. The analysis of N.D.C.C. ch. 32-18 provides further support for this interpretation. However, the Court cannot look outside of the clear and unambiguous language included in the contract.

We agree the contract for deed is unambiguous, but we disagree with the district court's interpretation of the contract.

[¶11] The district court found the last part of Section 15 contradicts the first part of Section 15. The default provision does not contain contradictions. The first paragraph governs the notice requirements before demanding the remedy of cancellation of the contract for deed. The second paragraph governs damages if

4

the buyer elects to demand cancellation of the contract. The remaining paragraph governs "all other remedies" such as "specific performance."

[¶12] Much of the confusion in this case results from different uses of the term "remedy." "[A] remedy is the appropriate legal form of relief by which that remediable right may be enforced." *Ebner v. Haverty Furniture Co.*, 138 S.C. 74, 136 S.E. 19, 20 (1926); *see also Petition of Ecklund*, 67 N.D. 140, 270 N.W. 347, 349 (1936) (citations omitted) ("A civil action or a special proceeding is a remedy (section 7329, Compiled Laws) and a remedy is a measure employed to enforce a right or redress an injury."). "It is the form of relief by which the right is enforced and is no part of the cause of action." *Petition of Ecklund*, 67 N.D. 140, 270 N.W. at 349 (cleaned up). Under the Uniform Commercial Code, "remedy" "means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal." N.D.C.C. § 41-01-09(2)(gg). Therefore, cancellation of the contract for deed, a legal form of relief, is one remedy for default under the contract. Specific performance is another remedy. Neither is an exclusive remedy under the contract. The default provision is not contradictory.

[¶13] The district court, and the dissent, fail to appreciate the distinction our law and this contract make between a remedy and a method to achieve a remedy. For example, cancellation of the contract for deed is one remedy, which may be achieved by alternative methods "in accordance with the laws of the State of North Dakota." "This Court has said there are basically two methods to cancel a contract for deed: 1) a statutory cancellation under N.D.C.C. ch. 32-18; or 2) a court action." *Bendish v. Castillo*, 2012 ND 30, ¶ 7, 812 N.W.2d 398 (citations omitted). Cancellation of the contract for deed is a remedy for default under the contract that may be achieved by either the method of court action or the method of statutory cancellation under N.D.C.C. ch. 32-18.

[¶14] "Cancellation of a contract for deed by action is an action in equity, and the district court must base its decision on equitable principles." *Bendish*, 2012 ND 30, ¶ 7. "If a seller elects to cancel the contract by action, no statutory written notice of intent to cancel the contract is required. Further, when a seller cancels a contract for deed by action, there is no statutory redemption period and the redemption period is left to the district court's sound discretion." *Id.* ¶ 8 (internal

citations omitted); *see also Straub v. Lessman*, 403 N.W.2d 5, 7 (N.D. 1987) ("Unlike cancellation by notice, when a seller chooses to cancel by action, there is not a statutorily prescribed period for redemption and that matter is left within the sound discretion of the district court."). In *Bender v. Liebelt*, 303 N.W.2d 316, 319 (N.D. 1981), this Court explained: "In the absence of particular circumstances affecting the situation, a vendee defaulting under an executory land sale contract is entitled to a period within which to redeem after entry of the decree of foreclosure." "The facts of each case must be examined in order to determine the propriety of a redemption provision." *Id.* We explained, "courts should ordinarily attempt to avoid forfeiture." *Id.* "When a district court exercises its discretion after weighing the equities of the case, we will not interfere unless an abuse of discretion is affirmatively established." *Bendish*, 2012 ND 30, ¶ 9.

[¶15] Chapter 32-18, N.D.C.C., acknowledges both methods:

> No provisions in any contract for the purchase of land or an interest in land shall be construed to obviate the necessity of giving the aforesaid notice and no contract shall terminate unless such notice is given, any provision in such contract to the contrary notwithstanding, but the notice herein required shall not be deemed necessary if the contract in question is sought to be terminated by an action at law or in equity brought for that purpose upon failure to perform.

N.D.C.C. § 32-18-04(2).

[¶16] The district court recognized these two separate methods for cancellation of a contract for deed, but confused the separate methods with separate remedies. Then the court significantly relied on N.D.C.C. ch. 32-18 to reconcile the "contradictory provision" and to find notice was not necessary in this case. Section 32-18-04, N.D.C.C., explains, "*the notice herein required* shall not be deemed necessary if the contract in question is sought to be terminated by an action at law or in equity brought for that purpose upon failure to perform." (Emphasis added.) The court found notice was not required in this case because the Axvigs sought cancellation of the contract by an action at law. However, the "notice herein required" refers to the notice required by the statute. The notice

6

required under the contract for deed itself is a separate notice requirement that is necessitated by the agreed-upon terms of the parties' contract.

[¶17] The dissent views the two thirty-day notice provisions in the contract as an "optional remedy" or a third alternative method to achieve the remedy of cancellation. (Dissent ¶ 1) The contract for deed provides: "SELLER may, at his option, demand the entire remaining balances due under this Agreement and *to cancel this Agreement in accordance with the laws of the State of North Dakota*." (Emphasis added.) The contract allows the seller to cancel the agreement, not by concluding the two thirty-day notice requirements, but "in accordance with the laws of the State of North Dakota." The laws of North Dakota provide two methods to cancel the contract for deed. If the two thirty-day notice requirement was intended as an alternative method to achieve the remedy of cancellation, then the inclusion of "in accordance with the laws of the State of North Dakota" would be surplusage. Furthermore, the dissent's interpretation of the contract renders its notice provision void. *See* N.D.C.C. ¶ 32-18-04 ("No provisions in any contract for the purchase of land . . . . shall be construed to obviate the necessity of giving the aforesaid [statutory] notice and no contract shall terminate unless such notice is given."). "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." N.D.C.C. § 9-07-08.

[¶18] The dissent infers the "intent of the parties" was to create an alternative method to achieve cancellation by relying on the phrases "time is of the essence," and "without further notice." The dissent believes the notice requirement "imposes significant extra burden upon the seller before pursuing a remedy." Two thirty-day notices, a total of sixty days, is hardly a significant burden in a contract for deed spanning nearly ten years. Nor is the notice requirement "inconsistent with" the "time is of the essence" provision. Instead, the notice requirement cures any waiver of the expediency provision. The default provision also allows the seller to immediately take possession of the disputed property after the second 30-day period.

[¶19] "It is an often-stated principle of equity that time is not usually considered the essence of land-sale contracts unless specifically expressed to be so in the contract or necessarily implied as such." *Shervold v. Schmidt*, 359 N.W.2d 361, 363 (N.D. 1984) (citation omitted). Here, the parties expressly agreed "time is of the essence," which immediately precedes the notice requirement. The placement of the "time is of the essence" phrase is significant. "It is well established that a [seller] may waive, as to default on any installment, the provision of the contract making time the essence of the agreement. Any conduct or statement by the [seller] that induces the [buyer] to believe that the [seller] will not require strict adherence to the terms of the contract will be held to be a waiver." *Id.* (internal citations omitted). Czajkowski was delinquent on tax payments prior to Neuens's death, and after his death became delinquent on monthly installments for many months before the Axvigs commenced this action.

[¶20] "After the [seller] has . . . waived the [buyer's] obligation for strict compliance with the time-is-the-essence clause, he cannot obtain forfeiture of the contract unless he gives the [buyer] preliminary warning that strict compliance with the contract will be insisted upon in the future." *Id.* (citation omitted). "After the [seller] gives the [buyer] notice of his intention to insist upon strict compliance with the terms of the contract, he must additionally provide the [seller] with a reasonable time within which to perform or cure defaults. Once the [seller] has given the required notice the [buyer] must comply strictly in the future with the terms of the contract concerning payment dates." *Id.* at 363-64 (internal citations omitted). The parties agreed to the specific terms of the notice and opportunity to cure the default.

[¶21] The dissent's reliance on "without further notice" is equally misplaced. The contract for deed provides: "In such an event the SELLER may thereupon, without further notice, immediately take possession of the above described property and BUYER agrees that he will immediately surrender possession of said property." (Emphasis added.) This provision applies to *possession* of the property. Another provision of the contract provides: "BUYER shall be entitled to remain in possession of this property pursuant to the terms of this Agreement . . . and the BUYER shall be entitled to remain in possession so long as BUYER is not in default in accordance with this Agreement." If this alternative method for

cancellation of the contract for deed perfected after the two thirty-day notice periods, then seller would already be granted possession of the property through cancellation of the contract for deed. Commencement of the cancellation of the contract either by action or statutory provision does not immediately revert possession of the disputed property to the seller. This provision reverts possession of the property to the seller "without further notice" or separate action during the pendency of the cancellation action.

[¶22] Czajkowski argues the Axvigs failed to provide notice of default and an opportunity to cure default *as required by the contract*. The contract for deed states: "SELLER *may, at his option . . .* cancel this Agreement *in accordance with the laws of the State of North Dakota*." (Emphasis added.) Under the terms of the contract, the Axvigs may proceed with cancellation of the contract either with statutory notice under N.D.C.C. ch. 32-18 or by initiating a cancellation action as they have done here. However, the Axvigs may not proceed until *after* thirty days from notice of default, followed by a second notice, and an additional thirty days without cure, because the seller's option is conditioned: "If the BUYER fails to cure the default within the second thirty (30) day period after the second notice of default by SELLER is received, SELLER may [cancel in accordance with law]."

[¶23] The district court erroneously concluded the Axvigs may proceed by cancellation action without notice and an opportunity to cure because a party may do so under North Dakota law. The terms of the contract for deed specifically limit cancellation by the seller to require notice and an opportunity to cure before seeking the remedy of cancellation. Under the contract, the seller *must* provide notice of the default to the buyer. "If the BUYER cures the default within the first thirty (30) days after the first notice, it shall have no effect upon this Contract." However, "[i]f the BUYER fails to cure the default within the second thirty (30) day period after the second notice of default by SELLER is received, SELLER *may, at his option*, demand the entire remaining balances due under this Agreement and to cancel this Agreement in accordance with the laws of the State of North Dakota." (Emphasis added.)

[¶24] Under the plain language of the contract for deed, two separate notices must be given before pursuing the remedy of cancellation. Notice of default

under the contract was not given in this case. Only after notice is twice given and the default is not cured *may* the seller demand the remaining balance and demand to cancel the contract "in accordance with the laws of the State of North Dakota." Alternatively, "[t]he SELLER *may*, at his option, employ all other remedies allowed by law or in equity, including specific performance." Therefore, the language of the default provision is not contradictory. The seller *may* pursue cancellation of the contract, only after notice and a period of redemption.

[¶25] The district court misinterpreted the contract for deed by allowing the Axvigs to proceed with the cancellation action without first providing notice of the default and time to cure the default as required by the contract. Under the plain language of the contract for deed, Czajkowski was entitled to notice of default and opportunity to cure the default before the Axvigs demanded cancellation of the contract. The Axvigs did not provide notice of default under the contract prior to commencing this action. The Axvigs breached the contract.

IV

[¶26] We reverse the amended judgment.

[¶27] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte
James D. Hovey, D.J.


**Brady, District Judge, dissenting.**

[¶28] I respectfully dissent, concluding: (1) the two thirty-day notice provisions in the parties' contract were intended to afford the seller an optional and efficient remedy of cancellation ("Cancellation by Contractual Notice"), and (2) the majority's interpretation of those provisions as imposing a "pre-pursuit of cancellation" burden upon the seller while authorizing immediate reversion or repossession of the property (a remedy itself) disregards the parties' intent. While my interpretation renders the notice provisions void as contrary to

10

statutory requirements, there is no reasonable way to save the provisions. Moreover, the contract's provision for acceleration of payments accompanying cancellation is unlawful under any interpretation. In a nutshell, the majority and I presumably agree the contract contains an unlawful remedy provision but disagree on whether the notice provisions are also unlawful. Yet because the seller did not enforce any of the unlawful provisions, the cancellation by court action was appropriate.

[¶29] To be clear, the parties' intent was inconsistent with statute. Section 32-18-04, N.D.C.C., requires a seller, seeking cancellation by notice, to provide the buyer with either six months' or twelve months' notice (depending on the amount due) to correct the default and declares that such notice may not be shortened by agreement. The parties' creation of Cancellation by Contractual Notice thus was void and not enforceable. But it was not enforced. And, as set out by the excerpts below, one cannot save the contract by construing it as imposing a burden upon the seller to provide two thirty-day notices before pursuing cancellation—without violating the parties' intent, the primary goal of interpretation. *See Higgins v. Lund*, 2025 ND 47, ¶ 13, 17 N.W.3d 828, *as amended* (Mar. 6, 2025) ("A court's primary goal in interpreting a contract is to ascertain the intentions of the contracting parties at the time of contracting."); N.D.C.C. § 9-07-17 ("Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause subordinate to the general intent and purposes of the whole contract."); N.D.C.C. § 9-07-08 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."); N.D.C.C. § 9-07-06 ("The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable."); *see also Langer v. Pender*, 2009 ND 51, ¶ 25, 764 N.W.2d 159 ("[W]e reject the last sentence of Article 5(C)(1) as inconsistent with the main intention of the parties in executing the trust agreement[.]").

[¶30] It is worth noting that the majority and I agree the contract does not indicate the seller must always provide the two thirty-day notices if the buyer breaches. Where we diverge is on the circumstances when the contractual notices were required. I interpret the notices as required only when the seller intended

to seek cancellation via the contractual provisions (which again would not have been enforceable). The majority interprets them as required when the seller intends to later seek cancellation by statutory notice or court action. Thus under the majority's view, the seller would have no duty to provide the notices if seeking a remedy distinct from cancellation, such as breach of contract (for recovery of damages) or specific performance.

[¶31] An excerpt helping illustrate the parties' intent appears at the very outset of Section 15 dealing with default. The first sentence reads: "Time is of the essence of this Agreement." The parties accordingly declared their intent that performances must be timely. *See Langer v. Bartholomay*, 2008 ND 40, ¶ 20, 745 N.W.2d 649 ("Whether or not a contract requires performance at the exact time specified in the contract depends on whether or not time is of the essence."); *see also* N.D.C.C. § 9-07-23 ("Time is of the essence of a contract if it is provided expressly by the terms of the contract or if such was the intention of the parties as disclosed thereby."). Reasonable delays would not save a party from untimely performance. *See generally Keller v. Hummel*, 334 N.W.2d 200, 203 (N.D. 1983) ("Where time is not of the essence, a reasonable delay in performance does not constitute a breach of contract[.]").

[¶32] If the first sentence was not enough to conclude the parties' intended timely buyer performance, one need look no further than the very next sentence in the "Default" Section. The second sentence begins: "[i]f the BUYER should fail to perform fully and *promptly* any of the terms and provisions of this Agreement" (emphasis added). The parties' focus on the buyer's timely performance helps show their intent to provide the seller with the remedy of Cancellation by Contractual Notice.

[¶33] The parties' intent is further bolstered by their use of "if" and "may" in the context of the buyer's continued breach and the seller's recourse. These are words signifying a triggering event and the resulting authorization. Upon the failure to cure after the second notice period, the parties authorized the seller to demand the balance due and to cancel the agreement: "*If* the BUYER fails to cure the default within the second thirty (30) day period after the second notice of default by SELLER is received, SELLER *may*, at his option, demand the entire

remaining balances due under this Agreement and to cancel this Agreement in accordance with the laws of the State of North Dakota." (Emphasis added.) The majority's interpretation reworks the seller's option into a burden, akin to: if the seller desires to cancel the contract, the seller shall provide the two notices, and if the buyer still fails to cure, then the seller may pursue cancellation by statutory notice or court action (a remedy that otherwise would be available to any seller in a contract for deed).

[¶34] The majority emphasizes the phrase at the end of the "if/may" sentence, namely, "in accordance with the laws of the State of North Dakota." That phrase is used to construe Section 15 as not intending Cancellation by Contractual Notice—and instead imposing the additional burden upon the seller. More specifically, the majority's view is that the seller is not authorized to cancel the contract after the two thirty-day notice periods run and the buyer fails to cure— but, instead, is only authorized to cancel after the seller also: (a) provides a third notice and the buyer does not cure within the additional six-month or one-year period for statutory cancellation by notice under N.D.C.C. § 32-18-04, or (b) succeeds in a court action for cancellation. That construction improperly disregards the parties' focus on timeliness and efficiency. *See* N.D.C.C. § 9-07-15. ("Particular clauses of a contract are subordinate to its general intent."); N.D.C.C. § 9-07-18 ("Words in a contract which are inconsistent with its nature or with the main intention of the parties are to be rejected.").

[¶35] The parties' use of "without further notice" shows intent to provide the seller an efficient remedy. That phrase describes the seller's authority to take possession of the property after the buyer's failure to cure upon the two notices and the seller demands cancellation. Section 15 provides that "[i]n such an event the SELLER may thereupon, without further notice, immediately take possession of the above described property[.]"

[¶36] The parties' use of "immediately" similarly shows their intent to create Cancellation by Contractual Notice. That word likewise describes the seller's authority to take possession of the property after the buyer's failure to cure upon the two notices and the seller demands cancellation.

13

[¶37] Attempting to reconcile the "time is of the essence" and prompt performance provisions with its interpretation, the majority construes the contract as "allow[ing] the seller to immediately take possession of the disputed property after the second 30-day period." Quandaries result. The majority's interpretation, ironically, creates a different and potentially temporary remedy: immediate repossession—prior to cancellation. The contract, though, is conspicuously silent as to return of the property to the buyer if cancellation by action or by statutory notice fails, e.g., the buyer cures within the additional six-month or one-year period, or the seller does not prevail in the court case. Nor does immediate repossession of the property appear consistent with the principles underlying statutory cancellation; indeed, N.D.C.C. § 32-18-04 provides the buyer with either six months or one year to "correct the default."

[¶38] What's more is that even under the majority's construction, the parties' provision for acceleration of payments appears unlawful. The Court has ruled that a seller may not accelerate payments and obtain cancellation by notice under N.D.C.C. ch. 32-18. *See Johnson v. Gray*, 265 N.W.2d 861, 863 (N.D. 1978). Recognizing that N.D.C.C § 32-18-04 allowed the buyers "to perform the conditions or comply with the provisions upon which the default shall have occurred," *Johnson* explained, "We do not believe that the Legislature intended, by the use of this language, to allow a seller to make payment of an accelerated balance one of the conditions with which the buyer must comply in order to reinstate the contract and to prevent forfeiture of his equitable interests in the property under this statute." *Id.* The Court has similarly explained that through a court action, a seller may not recover both acceleration of payments (damages) and cancellation of the contract. *Langenes v. Bullinger*, 328 N.W.2d 241, 244–46 (N.D. 1982) ("The remedies available to a vendor upon the default by the vendee under a contract for deed have been described by this Court … He cannot both cancel the contract and recover the purchase price."; "These authorities established that a vendor in an action to cancel a contract for deed cannot recover a personal money judgment and also cancel the contract for deed.") (citations omitted). The point is that under any interpretation, the parties intentionally agreed on some provisions that were unlawful. The majority and I thus

14

presumably agree that the parties included unlawful remedy provisions—but disagree on the quantity of unlawful provisions the parties included.

[¶39] Further support showing the parties' intent for Cancellation by Contractual Notice is found in the "specifications of remedies" provisions, i.e., the final paragraph of the "Default" section. Those provisions indicate that "[t]he specifications of remedies available to the SELLER upon default as provided in this Agreement are not exclusive" and "[t]he SELLER may, at his option, employ all other remedies allowed by law or in equity[.]" The "specifications of remedies" aligns with the process Section 15 sets out: two thirty-day notices and failure to cure within the periods, i.e., Cancellation by Contractual Notice. If the "specifications of remedies" simply meant cancellation "in accordance with the laws of the State of North Dakota," there would be little detail or specification. In contrast, the two thirty-day notice provisions provide significant detail and would fairly constitute a "specification of remedies." *See Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/specification (last visited June 30, 2025) (including a definition of "specification" as "a detailed precise presentation of something or of a plan or proposal for something— usually used in plural").

[¶40] Also compelling is that the contract itself labels the seller's authority (following the two notices) as the right to declare the agreement forfeited. In the "Non-Waiver of Remedies" section of the contract, the parties recognized the seller's "right to declare this Agreement forfeited or the payments accelerated[.]" That right cannot reasonably be construed as the seller's rights to simply seek cancellation by statutory notice or court action. Indeed, the right referenced in the "Non-Waiver of Remedies" section tracks with the authority to both accelerate and cancel granted in the "Default" section, i.e., where the seller "may at his option, demand the entire remaining balances due … and to cancel this Agreement in accordance with the laws of the State … [and] [i]n such an event … may … immediately take possession." And the next sentence completes the connection. The parties designated the sequence of events (i.e., the seller's demand to accelerate and to cancel and taking of immediate possession) as "such forfeiture and cancellation of this Agreement, as provided above[.]" The parties thus used "forfeiture" and cancellation" as synonyms. So does our legislature.

*See* N.D.C.C. § 32-18-01 ("No owner of real estate … who shall make or execute a contract for deed … shall have the right to declare a *cancellation, termination, or forfeiture* thereof or thereunder, except upon written notice to the vendee or purchaser, or the vendee's or purchaser's assigns, as provided in this chapter[.]") (emphasis added). In short, the parties attempted to afford an efficient seller remedy—Cancellation by Contractual Notice.

[¶41] Although my interpretation renders the contractual notice provisions void and unenforceable, they were not enforced. Moreover, I find no way to salvage the provisions without undermining the parties' intent. While my analysis at times differs from the district court's, I agree with the ultimate conclusion that the seller lawfully cancelled the contract by court action. I would affirm that portion of the district court's decision canceling the contract.

[¶42] Reid A. Brady, D.J.

[¶43] The Honorable James D. Hovey, District Judge, sitting in place of Crothers, J., disqualified. The Honorable Reid A. Brady, District Judge, sitting in place of Bahr, J., disqualified.

16