# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 40

Amber Haskell,                                                              Plaintiff and Appellant

v.

Grand Forks Public School District,                          Defendant and Appellee

### No. 20250275

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Theodore Sandberg, Judge.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Justices Jensen and Bahr joined. Justice Crothers filed an opinion concurring and dissenting, in which Chief Justice Fair McEvers joined.

Michael J. Geiermann, Bismarck, N.D., for plaintiff and appellant.

Howard D. Swanson (argued) and Yusaf Abas (on brief), Grand Forks, N.D., for defendant and appellee.

**Tufte, Justice.**

[¶1]   Amber Haskell appeals from a judgment entered after an order granting summary judgment to Grand Forks Public School District ("School District") and dismissing her claim of an open meetings violation. We affirm in part, holding that the district court did not err in concluding that the Grand Forks Public School Board ("School Board") did not waive its right to enter an executive session, the requirements were met to enter an executive session, and Haskell's due process rights were not violated by not providing her an opportunity to review the executive session transcript. We reverse in part, concluding the court abused its discretion by failing to review the executive session recording before granting summary judgment to the School District. We reverse the judgment of dismissal and order awarding costs and disbursements, and remand for the court to review the executive session recording and for further proceedings consistent with this opinion.

I

[¶2]   Haskell is a field consultant for North Dakota United, a public teachers' union. The facts underlying this open-meetings case involve a July 24, 2024, level 4 grievance appeal hearing between then Grand Forks Red River teacher David Christianson and the School Board.

[¶3]   The open meeting began with Rachel Bruner, the attorney representing the School District and School Board, discussing the facts of the grievance. Bruner explained the rationale behind the decision to transfer Christianson and remove his extracurricular duties. Bruner publicly stated the School District's position multiple times, including that Christianson's contracts for band duties were extracurricular contracts and not extended contracts. After Bruner's argument, Christianson's attorney, Michael Geiermann, presented the School Board with his client's position: namely, that the contracts should be considered extended contracts and not extracurricular contracts. Geiermann identified the amount in controversy and argued the cost of litigation may be more than paying

Christianson the money he believed he was owed. Geiermann concluded and the School Board voted to enter an executive session to allow Bruner to privately advise the Board on Christianson's grievance. The School Board went into executive session, returned on the record, and voted to deny the relief Christianson requested on appeal.

[¶4] Haskell sued the School District, claiming the closed executive session was improper. She claimed the School Board violated the open meetings statute and asked the district court to require the School Board to disclose the recording of the closed session of the meeting, a remedy available under N.D.C.C. § 44-04-21.2(1). Both parties moved for summary judgment and stipulated no issues of material fact existed. The district court granted summary judgment to the School District and awarded the district its litigation costs. Haskell appeals.

II

[¶5] Our standard for reviewing a grant of summary judgment is well established:

> In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Axvig v. Czajkowski*, 2025 ND 135, ¶ 5, 24 N.W.3d 79 (quoting *Berger v. Sellers*, 2023 ND 171, ¶ 7, 996 N.W.2d 329). This Court also applies a de novo standard of review for an alleged violation of the constitutional right of due process. *Zittleman v. Bibler*, 2025 ND 87, ¶ 7, 20 N.W.3d 148.

[¶6] "All meetings of a public entity must be open to the public, except as otherwise provided by law." *Schmitz v. N.D. State Bd. of Chiropractic Exam'rs*, 2021 ND 73, ¶ 9, 958 N.W.2d 496 (*Schmitz I*) (citing N.D.C.C. § 44-04-19). One

exemption to the open meetings law is for certain attorney consultations with public bodies. N.D.C.C. § 44-04-19.1(2). Subsection five defines attorney consultation:

> "Attorney consultation" means any discussion between the members of a governing body and its attorney in instances in which the governing body seeks or receives the attorney's advice regarding and in anticipation of reasonably predictable or pending civil or criminal litigation or adversarial administrative proceedings or to receive its attorney's advice and guidance on the legal risks, strengths, and weaknesses of an action of a public entity which, if held in public, would have an adverse fiscal effect on the entity. All other discussions beyond the attorney's advice and guidance must be made in the open, unless otherwise provided by law. All statements made by a participant or between participants during an executive session held for the purpose of attorney consultation are exempt if the statements relate to the subject for which attorney consultation was established. Mere presence or participation of an attorney at a meeting is not sufficient to constitute attorney consultation.

N.D.C.C. § 44-04-19.1(5).

### III

[¶7] Haskell claims the district court misapplied the attorney consultation exemption defined in N.D.C.C. § 44-04-19.1(5). She alleges the School Board waived the right to enter an executive session when Bruner provided legal advice to the School Board at the public portion of the hearing.

[¶8] In *Schmitz v. North Dakota State Board of Chiropractic Examiners*, this Court explained when an executive session can be entered for attorney consultation:

> (1) [W]hen it seeks or receives the attorney's advice regarding and in anticipation of reasonably predictable or pending civil or criminal litigation, or an adversarial administrative proceeding; or (2) to receive its attorney's advice on the legal risk, strengths, and weaknesses of an action of a public entity which, if held in public, would have an *adverse fiscal effect* on the entity.

3

2022 ND 52, ¶ 10, 971 N.W.2d 892 (*Schmitz II*) (emphasis added). A governing body and its attorney must make all other discussions public to ensure compliance with the open meetings statutes, unless an exemption applies. *Id.*

[¶9]   Here, the School District relied on the adverse-fiscal-effect provision of the attorney consultation exemption. School Board President and Chairman David Berger asked the School Board to move "to hold an executive session, receive the board's attorney's advice and guidance on the legal risks, strengths, and weaknesses of its decision for the level four grievance appeal as allowed by [N.D.C.C.] § 44-04-19.1(2), (5) . . . . " The motion was seconded and the School Board voted to enter an executive session. Haskell argues the attorney consultation exemption can be waived, and the School Board waived the exemption in this case. In support of her argument, Haskell cites a 2002 North Dakota Attorney General Opinion stating:

> [A] public entity essentially waives its right to invoke the exceptions to the open records and meetings laws in N.D.C.C. § 44-04-19.1 for attorney work product or attorney consultation if the public entity allows its adversary to review the work product or attend the consultation.

*N.D. Att'y Gen. Op. 2002-O-01*; *see Sorum v. Dalrymple*, 2014 ND 233, ¶ 10, 857 N.W.2d 96 ("We give respectful attention to the attorney general's opinions and follow them when we find them persuasive."). We agree with the Attorney General that the attorney consultation exemption can be waived by a public body. However, as we explain below, the application of the Attorney General's opinion that Haskell asks us to adopt is excessively broad.

[¶10] Haskell argues Bruner's presentation of the School District's position at the public hearing constituted legal advice to the School Board, thereby waiving the School Board's right to enter an executive session. Haskell argues Bruner gave legal advice when she made these and other similar statements:

> [T]he extracurricular contracts are not required to be offered to Mr. Christianson. He has no continuing contract right in my opinion to these extracurricular contracts. In coming to that conclusion, I want to point [out] a few things that I touched on a little bit before.

4

In my legal opinion, he has no right to those extracurricular contracts and I agree with the administration to deny his grievance and not pay him for those extracurricular contracts.

I do very much disagree with Mr. Geiermann's citations. His quotes of those cases are accurate, I'm not saying they're not, but his interpretation is very different from what those cases said and from what the facts are in this case. These are extracurricular contracts.

[¶11] In *N.D. Att'y Gen. Op. 2002-O-01*, the Tioga City Commission entered an executive session where it conducted private negotiations with the adversarial party. The opinion correctly identified the presence of the adversarial party in the executive session as a waiver because public disclosure of the content of the attorney's advice during an executive session would not have adversely affected the City's legal negotiations. Here, unlike the situation in Tioga, neither Christianson nor Geiermann (nor any member of the public) was present during the School Board's executive session. Only members of the School Board and Bruner attended the session. Therefore, *N.D. Att'y Gen. Op. 2002-O-01* does not resolve Haskell's claim that the School Board waived its lawful authority to engage in the executive session.

[¶12] Haskell claims the School Board waived its right to enter an executive session when Bruner publicly stated her clients' position and explained why she believed her interpretation of the law was correct. We reject this claim.

[¶13] Bruner's public discussions of Christianson's contracts do not constitute a waiver of the School Board's right to enter an executive session. If such statements did constitute waiver, the attorney consultation exemption would be rendered useless anytime a public body's attorney openly articulated a governmental body's legal position. In that situation, not revealing or even concealing a body's position would result in less information rather than more information being available to the public. We reject the invitation to apply the law to achieve such a perverse result.

[¶14] Here, Bruner and her clients were required to disclose all information that did not fall under the exemption—including statements regarding what her

client's public position was on the grievance. *See Schmitz II*, 2022 ND 52, ¶ 10 ("The next two sentences following the attorney consultation exemption provide a directive that all other discussions beyond the attorney's advice and guidance must be made in the open, unless there is another exception . . . ."). The statutory requirement for open meetings would be frustrated if the practical effect of the attorney consultation exemption caused attorneys to refuse to speak publicly out of fear of waiving the ability to enter an executive session. Bruner's public statements—whether made to the Board or on its behalf—do not constitute a waiver of other consultation within the scope of the exemption. The district court did not err in concluding the School Board did not waive its right to enter an executive session under N.D.C.C. § 44-04-19.1(2).

IV

[¶15] Haskell claims the district court erred in finding the requirements were met to enter an executive session under N.D.C.C. § 44-04-19.1(5).

A

[¶16] Haskell argues the district court did not properly apply the statute and did not satisfy the factual requirements for entering an executive session. Section 44-04-19.1(5), N.D.C.C., allows for an executive session "to receive its attorney's advice on the legal risk, strengths, and weaknesses of an action of a public entity which, if held in public, would have an adverse fiscal effect on the entity." *Schmitz II*, 2022 ND 52, ¶ 10. At the meeting, a school board member moved for an executive session to "receive [Bruner's] advice and guidance on the legal strengths and weaknesses of its decision for the level four grievance appeal" referencing N.D.C.C. § 44-04-19.1(2), (5). The School Board approved the motion to enter an executive session. *See N.D. Att'y Gen. Op. 2025-O-05* ("Before going into an executive session, a governing body must announce during the open portion of the meeting the topics that will be discussed during the executive session and the legal authority for holding an executive session on those topics." (citing N.D.C.C. § 44-04-19.2(2)(b))). The form and substance of this process was sufficient to enter an executive session under the attorney consultation exemption in N.D.C.C. §§ 44-04-19.1 and 44-04-19.2.

6

B

[¶17] Haskell argues the district court misapplied the portion of the attorney consultation exemption relating to the adverse fiscal effect on the School District and School Board. She argues confidentiality about the fiscal impact of Christianson's claim ceased to exist after the value of his contracts was publicly discussed. We reject Haskell's suggested application of the adverse fiscal effect as overly simplistic.

[¶18] Section 44-04-19.1(5), N.D.C.C., describes the relevant portion of the attorney consultation exemption as follows:

> "Attorney consultation" means any discussion between the members of a governing body and its attorney in instances in which the governing body seeks or receives the attorney's advice regarding and in anticipation of reasonably predictable or pending civil or criminal litigation or adversarial administrative proceedings or to receive its attorney's advice and guidance on the legal risks, strengths, and weaknesses of an action of a public entity which, if held in public, would have an adverse fiscal effect on the entity.

[¶19] The exemption allows the School Board to engage in private discussions when the entity is faced with situations exposing the public body to adverse fiscal effects. The amount of money Christianson was seeking was already public information; however, the concept of an adverse fiscal effect is not so narrow. The adverse-fiscal-effect language provides an exemption for the School Board to have discussions privately that would negatively impact the fiscal position of the School Board. N.D.C.C. § 44-04-19.1(5).

[¶20] Although the dollar amount at issue was publicly known, that fact alone does not foreclose the School Board's ability to enter an executive session to discuss topics that have fiscal impacts such as: the cost of litigating the dispute, the likelihood of succeeding in litigation, or the potential impact on resolutions of other contract disputes. *See* THE GEN. COUNSEL DIV., OFF. OF ATT'Y GEN., NORTH DAKOTA OFFICE OF ATTORNEY GENERAL OPEN MEETINGS MANUAL 21, https://attorneygeneral.nd.gov/wp-content/uploads/2024/04/Open-Meetings-Manual.pdf (2024) ("An executive session is authorized under this

7

exception only if holding an open meeting would have an *adverse fiscal effect on the bargaining or litigating position* of the public entity, and may not be used to perform employee evaluations.") (emphasis added); *see also N.D. Att'y Gen. Op. 2015-O-13* (a public entity cannot close a meeting under N.D.C.C. § 44-04-19.1(9) if the negotiations are conducted with the other party present during the executive session because no adverse fiscal effect on the bargaining position of the public entity continues to exist).

[¶21]  The district court did not err in its application of the adverse fiscal impact portion of the attorney consultation exemption and in concluding the School Board properly entered an executive session under N.D.C.C. § 44-04-19.1(2).

V

[¶22] Haskell claims the district court violated her due process rights by not providing her an opportunity to review the executive session transcript. Haskell argues, "when the District Court reviews the July 24, 2024 executive session recording in camera, Haskell is denied Due Process as she will not have an opportunity to review the content of the discussion." She claims to have a constitutional right to view the transcript from the executive session so she can "meaningfully and effectively argue her case before this Court." She cites *Muraskin v. Muraskin* in support of her claim. 336 N.W.2d 332, 335 n.2 (N.D. 1983) (discussing the due process implications of parties knowing what evidence is going to be used against them to allow for rebuttal or cross-examination).

[¶23] "Procedural due process requires fundamental fairness, which at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case." *Overton v. Overton*, 2025 ND 187, ¶ 5, 27 N.W.3d 469. This Court applies a de novo standard of review for an alleged violation of the right to procedural due process. *Id.* ¶ 4. "In camera inspection" is defined as "[a] trial judge's private consideration of evidence." *In Camera Inspection*, BLACK'S LAW DICTIONARY 906 (12th ed. 2024). Generally, "[w]e recognize in camera review may be an appropriate recourse for a party disputing a claim of privilege, especially when a relatively few number of documents are involved like here." *St. Alexius Med. Ctr. v. Nesvig*, 2022 ND 65, ¶ 22, 971 N.W.2d

8

878. Haskell has cited no authority, and we have found none, for the proposition that a party seeking disclosure of records withheld as privileged or as exempt from open records laws has a due process right to participate in an in camera review or to access the records for the purpose of fully arguing why the party should have access to them. The argument refutes itself; granting access to contest the exemption would vitiate the exemption. The court did not err by not providing Haskell with a full transcript of the executive session.

VI

[¶24] In her statement of issues, Haskell argues "the District Court erred in failing to review the July 24, 2024 executive session recording." Haskell repeatedly argued to the district court that if it rejected her due process argument, under *Schmitz I* and *Schmitz II* the court "will then need to conduct an in-camera review of the recording to determine if the Board violated the open meetings law while conducting the executive session." On appeal, she argues:

> [T]he District Court concluded since the Board President filed an affidavit/declaration claiming the Board did everything right in the July 24, 2024 executive session and neither Ms. Haskell or the undersigned filed a declaration or affidavit/declaration in response, the District Court did not have to review the recording. The District Court stated Ms. Haskell conceded there were no facts in dispute and therefore the Board was entitled to summary judgment without even a review of the recording. Ms. Haskell properly presented this court with a case which required it to, at a minimum, review the recording and correctly address the Due Process argument. The action of the District Court is reversible error requiring a remand.

Haskell elaborated that the court's refusal to review the executive session "renders the review process meaningless" by relying on the government's assurance it complied with the law unless she can present evidence she has no way of accessing.

[¶25] The North Dakota Constitution establishes transparency as the default rule for government operations. "Unless otherwise provided by law, all meetings of public or governmental bodies . . . shall be open to the public." N.D. Const. art. XI, § 5. Likewise, "[u]nless otherwise provided by law, all records of public or

governmental bodies . . . shall be public records, open and accessible for inspection." N.D. Const. art. XI, § 6. These provisions reflect a deliberate choice by the people of North Dakota: the government conducts the people's business, and the people are entitled to see how that business is conducted.

[¶26] This Court has consistently honored that choice. We have held that open meetings laws are given a "broad and expansive reading" with the aim of ensuring the public may inform itself of how public business is conducted and public money is spent. *Adams County Record v. GNDA*, 529 N.W.2d 830, 833 (N.D. 1995). We have required that exemptions to open records laws be "specific" and "may not be implied." *Hovet v. Hebron Pub. Sch. Dist.*, 419 N.W.2d 189, 191 (N.D. 1988). And we have recognized that these principles serve the Legislature's purpose "to provide the public with the right and the means of informing itself of the conduct of the business in which the public has an interest." *Grand Forks Herald v. Lyons*, 101 N.W.2d 543, 546 (N.D. 1960).

[¶27] We review a district court's decision on a request for in camera review under an abuse of discretion standard. *Schmitz II*, 2022 ND 52, ¶ 14. The constitutional presumption of openness should inform how district courts exercise their discretion when a citizen challenges a claimed exemption. When the question is whether the government has complied with an exception to the constitutional presumption of openness, courts should not automatically accept the government's assurance that it has. A district court that declines to conduct even minimal verification of a government exemption claim—particularly when the burden of review is as modest as it is here—abuses its discretion. *See Schmitz I*, 2021 ND 73, ¶ 14.

[¶28] Our precedent supports in camera review in situations like this. The district court distinguished this case from *Schmitz I* on the ground that, in this case, the court received motions for summary judgment rather than a motion to dismiss under N.D.R.Civ.P. 12(b)(6).

[¶29] In *Schmitz I*, the plaintiff alleged that executive sessions "went beyond the attorney's advice and guidance, so as to require such discussion to be public." 2021 ND 73, ¶ 11. We reversed the dismissal and directed the district court to

conduct in camera review and require disclosure "to the extent the district court determines on remand that the recordings of the executive sessions, or discussion therein, went beyond the scope of attorney consultation." *Id.* ¶ 14. Haskell made the identical allegation in her Amended Complaint: "the Board conducted discussions beyond the attorney's advice and guidance during that Executive session." In her brief opposing summary judgment, she again argued the content of the recording is unknown to her, it had not been filed with the court, and the court had a duty under *Schmitz II* to review for compliance with open meetings law.

[¶30] *Schmitz II* confirms that judicial review serves an independent gatekeeping function—not merely a rubber stamp for the government's assertions. On appeal, this Court conducted its own in camera review and identified ten separate time segments requiring disclosure that the district court had missed. 2022 ND 52, ¶ 15. If we had simply deferred to the board's characterization of its executive session, those violations would have gone undetected. The same risk exists here.

[¶31] The district court's approach creates an impossible burden for Haskell. The court declined to conduct in camera review because Haskell presented "no evidence" of improper conduct during the executive session and failed to "refute" the declarations submitted by the School Board's attorney and chairman. But Haskell has never heard the recording. She cannot know what the School Board discussed during the executive session. If she were to file a declaration alleging specific improprieties she cannot know, she would risk sanctions under N.D.R.Civ.P. 56(g). Yet the court treated her inability to make such allegations as a concession that no improprieties occurred. This is the very "catch-22" that federal courts have recognized undermines meaningful judicial review of government secrecy claims.

[¶32] The U.S. Court of Appeals for the District of Columbia confronted this problem in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a case arising under the Freedom of Information Act. On the basis of an affidavit containing a conclusory opinion that contents of the records sought were exempt from disclosure, the district court granted the government's motion for summary judgment. *Id.* at 823. The circuit court observed that FOIA litigation involves an

inherent asymmetry that "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Id.* at 824. Because the government alone knows what the disputed records contain, the citizen "cannot know" whether the government's exemption claim is valid. *Id.* at 823. Once the government claims an exemption from disclosure, "the opposing party is comparatively helpless to controvert this characterization." *Id.* at 826. The circuit court reversed the district court's grant of summary judgment, and remanded for further proceedings in which the government bore the burden to justify the claimed exemptions. *Id.* at 828.

[¶33] The same asymmetry exists here. The School District knows what the School Board discussed during the executive session; Haskell does not. The district court does not. Requiring Haskell to show impropriety before the court will even look at the recording inverts the constitutional presumption of openness. It places the burden on the citizen seeking transparency rather than the government seeking secrecy.

[¶34] The district court relied on three pieces of evidence to conclude that in camera review was unnecessary: (1) the meeting notice and motion for executive session; (2) a declaration from School Board Chairman Berger; and (3) an email from Attorney Bruner to opposing counsel. None of this evidence warrants the confidence the court placed in it.

[¶35] The meeting notice and motion establish only that the School Board complied with required procedure before invoking the attorney consultation exemption—not that the School Board's subsequent discussion actually fell within that exemption's scope. As *Schmitz II* demonstrates, the fact that a board properly enters an executive session does not mean everything discussed in that session is exempt. 2022 ND 52, ¶ 15.

[¶36] Chairman Berger's declaration is on behalf of the same governing body claiming the exemption, which has an obvious interest in the outcome. Attorney Bruner's email is advocacy on behalf of her client, not neutral evidence. A person requesting records may have justified skepticism that the chairman or the attorney will be eager to fairly scrutinize potential violations by their own board.

12

As federal courts have recognized, "[t]o accept an inadequately supported exemption claim would constitute an abandonment of the trial court's obligation . . . to conduct a de novo review." *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (cleaned up).

[¶37] This concern is not hypothetical. In *Schmitz II*, the Board's attorney had reviewed the executive session recordings and identified only a limited portion for disclosure. This Court's independent review identified significantly more. 2022 ND 52, ¶ 15. If Attorney Bruner's review here is similarly incomplete, we have no way of knowing without an independent review.

[¶38] The district court emphasized that this case involves summary judgment with stipulated facts, unlike the Rule 12(b)(6) posture in *Schmitz I*. But the stipulation here concerned only the open portion of the July 24 meeting—the portion recorded on YouTube and transcribed. The parties could not stipulate to the material facts about the executive session because Haskell has no knowledge of what occurred there.

[¶39] Summary judgment standards presuppose that both parties have access to the relevant evidence. *See Weidner v. Engelhart*, 176 N.W.2d 509, 520 (N.D. 1970) (recognizing "that a court should be cautious in granting a motion for summary judgment where the facts in issue are peculiarly in the knowledge of the moving party"). Here, Haskell alleged the School Board exceeded the scope of the exemption. She cannot access the only evidence capable of raising a genuine issue of fact on that allegation. The School District controls the only evidence and assures Haskell and the district court that no violation occurred. Under the district court's approach, the School District's assurance ends the inquiry. This effectively makes the exemption irrebuttable whenever the government chooses to contest disclosure—a result incompatible with our constitutional commitment to open government.

[¶40] District courts have discretion whether to conduct in camera review. But discretion is not unlimited. A court abuses its discretion when it "misinterprets or misapplies the law" or when its decision "is not the product of a rational

mental process leading to a reasoned decision." *Estate of Smith*, 2021 ND 238, ¶ 19, 968 N.W.2d 157.

[¶41] Here, the district court required Haskell to show impropriety before it would review the recording—but the only facts that can resolve the question are in the recording. If the executive session was properly limited in scope, Haskell should not be permitted access. That is why her arguments that she should be permitted to be present at an in camera review must fail. But the court's circular reasoning cannot be squared with our constitutional framework or our precedent in *Schmitz I* and *Schmitz II*. The court's reliance on declarations from interested parties, without any independent verification, abdicated its gatekeeping responsibility. *See Anne Carlsen Ctr. v. LeFevre*, 2025 ND 142, ¶ 10, 24 N.W.3d 360 ("[W]hen, as here, a district court conducts an in-camera review to assess disputed assertions of privilege or protection, it may be appropriate for the court to review both unredacted copies of the documents as well as proposed redactions. Review of proposed redactions places the burden on the withholding party to identify which documents or parts of documents are protected from disclosure by each asserted basis."); *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 156 n.3 (N.D. 1996) ("Most of the courts which have directly addressed this issue [medical peer review privilege] have either required, or strongly encouraged, in camera review of the material for which the privilege is claimed.").

[¶42] We do not suggest that parties may impose limitless burdens on district courts to conduct in camera review when they dispute exceptions to disclosure requirements. The district court may properly consider the volume of material it is asked to review in camera. *St. Alexius*, 2022 ND 65, ¶ 22 ("We recognize in camera review may be an appropriate recourse for a party disputing a claim of privilege, especially when a relatively few number of documents are involved like here."). Where the records or meeting recordings sought are voluminous or otherwise burdensome for a court to review, the court may exercise its discretion in fashioning an appropriate approach under the circumstances, including reviewing in camera a subset of the records or recordings first to test the veracity of the public entity's claim of exemption. If accurate in its exemption claim on the limited portion, the court may assess whether a review of the remaining

voluminous material is necessary. Further, if appropriate under N.D.R.Civ.P. 53, the court may appoint a special master to review the voluminous records or recordings. *See Vaughn*, 484 F.2d at 828 ("[I]t is within the discretion of a trial court to designate a special master to examine documents and evaluate an agency's contention of exemption."). Here, the burden of conducting in camera review is modest—a single audio file 27 minutes long. On this record, declining to listen to a 27-minute recording before granting summary judgment on a constitutional open-government claim was an abuse of discretion. Reviewing it and determining whether it constitutes "attorney consultation" is precisely the analysis this Court performed in *Schmitz II*. That analysis revealed violations the district court had missed. The same analysis should occur here.

[¶43] The dissent raises concerns about "potential for trivial or abusive requests" by other litigants who may seek in camera review of alleged violations of the open records or meetings laws. We decide only the case before us. No argument has been made that Haskell was seeking in camera review for the purpose of harassment or that the request for review was duplicative of a prior request to review records alleged to be exempt from disclosure. As we have stated, the district court exercises discretion in whether, and to what extent, it inspects records in camera. If a litigant is repetitive, abusive, or harassing, the court may exercise its discretion to curtail its review or issue appropriate relief. *See also* N.D.R.Civ.P. 11 (allowing sanctions for filings intended to harass or for other improper purposes); N.D. Sup. Ct. Admin. R. 58 (addressing vexatious litigation).

[¶44] Our constitution promises the people of North Dakota that their government will operate in the open. That promise means little if citizens must simply take the government's word that closed-door discussions complied with the law. When a citizen alleges otherwise, and the only evidence of compliance comes from the government itself, the least a district court can do is look.

[¶45] We conclude the district court abused its discretion by failing to review the executive session recording before granting summary judgment to the School District. We reverse the judgment of dismissal and the district court's grant of summary judgment on the in camera review issue and remand with instructions

to review the executive session recording. *Hagen v. N.D. Ins. Rsrv. Fund*, 2022 ND 53, ¶ 27, 971 N.W.2d 833 (remanding "to the district court to review those previously excluded records in camera to determine whether they are exempt from disclosure under the potential liability exception"). On remand, the court must apply the standard we articulated in *Schmitz II*: determine whether, "at certain points," the School Board was "discussing the proceeding without consulting with its attorney or seeking her guidance," and order disclosure of any such portions. 2022 ND 52, ¶ 15. The district court—not the School Board's attorney—must make that determination. The court should exercise its discretion to confirm, not merely assume, the government's good faith in its assertion of exemptions.

[¶46] Because we reverse the judgment of dismissal and remand for further proceedings, the School District is no longer the prevailing party. We therefore reverse the order granting the School District its costs and disbursements as the prevailing party.

VII

[¶47] We affirm in part, concluding the district court did not err in concluding that the School Board did not waive its right to enter an executive session, the requirements were met to enter an executive session, and Haskell's due process rights were not violated by not providing her an opportunity to review the executive session transcript. We reverse in part, concluding the court abused its discretion by failing to review the executive session recording before granting summary judgment to the School District. We reverse the judgment of dismissal and order awarding costs and disbursements, and remand for the court to review the executive session recording.

[¶48] Jerod E. Tufte
       Jon J. Jensen
       Douglas A. Bahr

16

**Crothers, Justice, concurring and dissenting.**

[¶49] I concur in the majority opinion except Part VI, with which I respectfully dissent.

I

[¶50] The majority remands this case based on the lack of in camera review. I do not join that result because I disagree Haskell adequately briefed on appeal a claim the district court abused its discretion by not making an in camera review of the executive session record. Instead, I read her claim on appeal to be that the court erred by denying her due process right to participate in the in camera review of the executive session. As stated in her appellant's brief, "Ms. Haskell contends she has a constitutional Due Process right to participate in some type of meaningful review of the recording done by the District Court." She concluded that portion of her brief by arguing, "Ms. Haskell deserves a meaningful opportunity to participate in the in-camera review of the recording."

II

[¶51] If we reach the substantive issue, I agree a party seeking the content of a closed meeting faces a difficult burden due to his or her lack of knowledge about what transpired behind closed doors. However, I disagree with the majority that we should adopt a judicial process that allows a party to impose on a court the obligation to comb through public meeting transcripts without the plaintiff first making a minimal showing the law has been violated. *See Prod. Credit Ass'n of Mandan v. Olson*, 280 N.W.2d 920, 924 (N.D. 1979) ("[T]he objective of the Rules of Civil Procedure, as indicated by Rule 8, is 'to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details.'").

[¶52] Rather than imposing on a district court the naked obligation to perform in camera inspection, I would require the plaintiff to make verified factual allegations in her complaint or use recognized discovery tools to meet some

17

minimal threshold of establishing for the court that her claim has merit. *See, e.g.,* *Fisher v. Maricopa Cnty. Stadium Dist.*, 912 P.2d 1345, 1351 (Ariz. Ct. App. 1995) ("[A]fter a plaintiff, who is challenging an executive session under the Open Meeting Law, has filed a complaint alleging facts from which a *reasonable inference* may be drawn supporting an Open Meeting Law violation, the burden shifts to the defendant to prove that an affirmative defense or exemption should permit a closed-door executive session.") (Emphasis added.)

[¶53] Haskell and the majority note a litigant cannot make assertions of official misconduct without supporting facts. For her part, Haskell argues, "Because she was not allowed into the executive session and has not been provided with a copy of the recording, there is no way she or the undersigned can submit declaration or any other form of evidence to the contrary." For their part, the majority writes, "[Haskell] cannot know what the School Board discussed during the executive session. If she were to file a declaration alleging specific improprieties she cannot know, she would risk sanctions under N.D.R.Civ.P. 56(g)." Majority, ¶ 31. While both statements explain why Haskell could not establish her claim by using a verified complaint, neither accounts for the discovery process available to all civil litigants. Haskell could have and should have used interrogatories or depositions to investigate whether the executive session was limited to lawful topics.

[¶54] Instead of requiring a modicum of proof provided by a witness with knowledge or adduced from evidence obtained through normal civil discovery, it will be sufficient under the holding in this case for Haskell and any future claimant to merely demand that the district court perform in camera review. Rather than agreeing with that carte blanche approach, I believe a merits-based threshold better protects judicial resources, and more closely follows our presumption of regular governmental functions.

[¶55] The law presumes governmental operations are conducted with regularity. N.D.C.C. § 31-11-03(15) (creating a "disputable presumption" "[t]hat official duty has been performed regularly"). In *Linden Sch. Dist. No. 24 v. Porter*, 130 N.W.2d 76, 80 (N.D. 1964), this Court explained where "there is no such evidence" contradicting regular performance, "the presumption as to regularity

is prima facie satisfaction of the officials' burden of proof." In the *Linden Sch. Dist.* case, we emphasized the disputable presumption means "where there is evidence that official duty has not been regularly performed, the burden of going forward with the evidence is cast upon the officials whose acts are challenged." *Id*.

[¶56] The presumption of regularity has been applied to when public bodies engage in an executive session. *See State ex rel. Hicks v. Clermont Cnty. Bd. of Comm'rs*, 219 N.E.3d 894, 901 (Ohio 2022) ("[W]hen a public body goes into executive session for a permitted reason under R.C. 121.22(G)(1), it is presumed to have acted lawfully during that executive session."). I believe the majority's approach flips that presumption of regularity on its head. As recognized in the *Hicks* case, "If we were to hold that the burden of production is on the public body in these circumstances, we would create a presumption of *irregularity*." *Id.* I am unwilling to take that step in this case, especially on this record. Rather, like our sister states, I would expect a requesting party to make some minimal showing of irregularity or violation of the lawful exemption to an open meeting. Without such a minimal threshold, we expose courts and governmental bodies to the potential for trivial or abusive requests for access to lawful, non-public meetings.

[¶57] It also is important to recognize this lawsuit is a civil judicial proceeding, and judicial proceedings have burdens of proof. "[W]e have usually assumed without comment that plaintiffs bear the burden of persuasion regarding the essential aspects of their claims. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005). If a litigation party is not prepared to meet even a minimal threshold of establishing a meritorious claim, the legislature has provided an open administrative process for seeking access to allegedly public meetings. *See generally* N.D.C.C. ch. 44-04.

[¶58] First, the statutory administrative process provides a means for citizen access to any alleged public meeting record without suggesting, much less proving, impropriety by the public body. N.D.C.C. § 44-04-21.1(1) ("Any interested person may request an attorney general's opinion to review a written denial of a request for records under section 44-04-18, a denial of access to a

meeting under section 44-04-19, or other alleged violation of section 44-04-18, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21 by any public entity other than the legislative assembly or any committee thereof."). This all-questions-answered procedure for challenging a public body's rejection of access to a meeting or meeting record is complementary—and not adversarial—to a proof-based judicial proceeding. *See* N.D.C.C. § 44-04-21.1(2) and (3) (providing for enforcement of the attorney general opinion by civil action, and allowing for recovery of costs and attorney's fees for a successful requesting party).

[¶59] Second, even accepting an inspect-on-demand scheme for courts (which I resist), the statutory administrative process provides us with guidance about the level of discretion a court should have in an action requesting access to a meeting record. Instead of requiring in camera review of every request like here, "[t]he attorney general *may request* and obtain information claimed to be exempt or confidential for the purpose of determining whether the information is exempt or confidential." N.D.C.C. § 44-04-21.1(1) (emphasis added.) "When used in a statute, the word 'may' is ordinarily understood as permissive rather than mandatory and operates to confer discretion." *In re C.A.R.*, 2020 ND 209, ¶ 9, 950 N.W.2d 186. Thus, North Dakota law does not require the attorney general to obtain and review all records. But, under the majority's approach, courts are required to conduct in camera review of any and all claimed open meeting violations, albeit with sampling (that Haskell did not request or even suggest) permitted for "voluminous" or "burdensome" records. Majority, ¶ 42.

[¶60] Therefore, while I agree courts should perform in camera review of the record when a minimal threshold of proof of violation has been established, in this case Haskell did not adequately make the argument we are addressing; nor did she provide *any* showing the school board's executive session was irregularly conducted or that the district court abused its discretion by not conducting an in camera review of the executive session. I would affirm.

[¶61]  Lisa Fair McEvers, C.J.
    Daniel J. Crothers

20